BOONVILLE NATIONAL BANK, Appellant, v. OSCAR J. SCHLOTZHAUER, County Collector; R. D. PEALER, Clerk of County Court; and S. H. GROVES, THOMAS GRATHWOHL and WALTER BRICKNER, Judges of County Court of Cooper County.—298 S. W. 732.,

Court en Banc, September 27, 1927.

**1. TAXATION: Arbitrary Discrimination in Assessments: Injunction: Certiorari.** The remedy for relief from an arbitrary assessment against petitioner's property, at a valuation of one hundred per cent of its actual value, while all other property of the class in the county is assessed at seventy-five per cent of its true value, is by injunction against the proper officers to restrain them from collecting so much of the tax as is due to the unlawful discrimination. The real gist of such a case lies in matters entirely **dehors** the record of the boards of equalization, and involve the acts of the county assessor; and in such case **certiorari** is not an adequate remedy, as it is not where the assessment is the result of actual fraud. [Criticising Bank v. Staats, 155 Mo. 55, and distinguishing other cases in which the grounds of relief were mistakes in judgment or miscalculations in making the excessive assessment, and were not the result of actual fraud.]

**2. ———: ———: ———: Fraud: Bank Stock.** An assessment by the county assessor of bank stocks at ninety per cent of their actual value, and all other personal property in the county at seventy-five per cent of its true value, and the action of the boards of equalization in raising the assessment of the bank stocks to one hundred per cent of their true value, while leaving undisturbed the assessment of all other personal property at seventy-five per cent, violate the constitutional provisions requiring uniformity of taxation upon the same class of subjects and that all property shall be taxed in proportion to its value, and are also contrary to the statute (Sec. 12802, R. S. 1919) establishing a rule of assessment for the guidance of assessment officers, and are an arbitrary and illegal discrimination, which enters into the very make-up of the assessment; and a petition which charges such facts charges fraud, against which a court of equity, in a direct attack upon the assessment judgment, will give relief by enjoining the county collector from enforcing the collection of the illegal portion of the tax assessed against the bank stock.

**3. ———: ———: ———: ———: Direct Attack.** The record acts of boards of equalization are given the status of a judgment, which equity can reach as it does the judgments of courts; and if the assessment judgment is tinctured with fraud and illegality in its concoction, the remedy is by injunction against the county collector to restrain him from enforcing the illegal part of the assessment, and such a suit is a direct attack upon the assessment judgment.

4. ———: ———: **Correcting Wrong.** The right of the taxpayer whose property alone is assessed at one hundred per cent of its true value, is to have his assessment reduced to the percentage of value at which all other property of the class is assessed, even though this be a departure from the prescribed statutory rule requiring uniformity of taxation. And this is the relief that a court of equity will give, and this relief is based on the principle that it is impossible, by any judicial proceeding, to secure an increase in the assessment of the great mass of under-assessed property in the taxing district, and it being impossible to secure to all the standard of true value, and the uniformity and equality required by law, a reduction in the assessment against the few taxpayers whose property is arbitrarily assessed at its true value, to the lower percentage at which all other property of the class is assessed, is to be preferred as the just and ultimate purpose of the law, to reach a uniform valuation of all property of the class as nearly as may be.

5. ———: ———: **Bank Stock: Fraud.** The assessment of bank stock by the county assessor at ninety per cent of its true value, and all other taxable property at seventy-five per cent of its true value, constitutes a legal fraud against the owners of the bank stock, an unjust discrimination, and a denial of the equal protection of the laws, both Federal and State; and being incorporated in the assessment judgment is a legal fraud concocted in its make-up, against which a court of equity, in a direct attack, will give relief.

6. ———: ———: **Assessment Judgment: Direct Attack: Upon Fraudulent Part.** An assessment judgment, though ultimately the record acts of various officers and boards, is to be regarded as one judgment. The various officers and boards, whose united action is by law intended to effect a uniform assessment on all classes of property, are to be regarded as one tribunal, and the whole assessment on all classes of property is to be regarded as one assessment judgment; and if the fraud of one officer, or of one board, enters into the assessment judgment, his fraud, or its fraud, makes the judgment fraudulent in its concoction. The greatest factor in the making of the assessment is the county (or township) assessor, and fraud upon his part vitiates at least all that portion of the assessment judgment which make an unlawful and fraudulent discrimination between taxpayers of the same class, and is a fraud in its concoction; and an injunction suit which seeks to have held for naught a substantial portion of the assessment judgment, namely, all that portion of it which on its face shows an arbitrary discrimination against the plaintiff, is a direct attack upon it, and is maintainable. A judgment for the plaintiff in such a suit will make void and of no effect only such portion of the assessment judgment, and leave a new judgment of assessment from which is eliminated the unlawful discrimination.

---

Corpus Juris-Cyc. References: **Judgments,** 34 C. J., Section 827, p. 520, n. 35.  **Taxation,** 37 Cyc., p. 727, n. 51; p. 760, n. 50; p. 1032, n. 80; p. 1267, n. 34; p. 1274, n. 75.

Appeal from Cooper Circuit Court.—*Hon. Henry J. Westhues,* Judge.

REVERSED AND REMANDED.

*Montgomery, Rucker & Hayes* for appellant; *Bryan, Williams & Cave, amici curiae.*

(1)   For purposes of a demurrer, all allegations of the petition and all inferences of fact that may fairly and reasonably be drawn therefrom, must be taken as true.   Martin v. Ray County Coal Co., 288 Mo. 241.   (2)   A banking corporation is the proper party plaintiff in a suit to test the legality of a tax upon the shares of its stockholders.   First Natl. Bank v. City of Independence, 99 N. W. 142; Whitney Natl. Bank v. Parker, 41 Fed. 402; Cummings v. National Bank, 101 U. S. 156; Knopf v. First Natl. Bank, 50 N. E. 660; Citizens Natl. Bank v. Columbia Co., 63 Pac. 209.   (a)   Under the statutes of Missouri, a bank is required to make a return of all of its taxable property as represented by its shares of stock and to pay the taxes thereon, but may recover from the owner of such shares the amount so paid or deduct the same from the dividends accruing on such shares.   Secs. 12775, 12777, R. S. 1919.   (b)   "An executor or administrator, a trustee of an express trust, or a person expressly authorized by statute, may sue in his own name without joining with him the person for whose benefit the suit is prosecuted.   A trustee of an express trust, within the meaning of this section, shall be construed to include a person with whom or in whose name a contract is made for the benefit of another."   Sec. 1156, R. S. 1919.   (c)   Under the foregoing statutes and decisions, the plaintiff bank may bring suit for relief against a discriminatory tax upon its stock without joining its stockholders for the reason that it is acting in a fiduciary capacity as the agent of its stockholders when it makes the return and pays the tax.   (d)   The bank is a proper party plaintiff for the reason that a multiplicity of suits is thereby avoided.   Cummings v. Natl. Bank, 101 U. S. 156; First Natl. Bank v. City, 99 N. W. 142; Whitney Natl. Bank v. Parker, 41 Fed. 402; Knopf v. National Bank, 50 N. E. 660.   (3)   An injunction will lie in behalf of a taxpayer to prevent the collection of an illegal tax, provided he has paid or tendered all the taxes except those he claims to be illegal.   St. Louis Iron Mt. Ry. Co. v. Anthony, 73 Mo. 431; Jacobs v. Cauthorn, 293 Mo. 154; Newmeyer v. Railway Co., 52 Mo. 81; Ewing v. Board of Education, 72 Mo. 436; Valle v. Zeigler, 84 Mo. 214; Overall v. Ruenzi, 67 Mo. 203; Arnold v. Hawkins, 95 Mo. 569; State ex rel. v. Western Union Tel. Co., 165 Mo. 502.   (a)   It is not necessary to the exercise of equitable relief that plaintiff should not have any remedy at law, but only that such remedy be inadequate or incomplete.   Jacob v. Cauthorn, 293 Mo. 155; McAlister v. Peterson, 256 Mo. App. 279; Pocoke v. Peterson, 256 Mo. 501.   (b)   The remedy of *certiorari* is inadequate, because it takes up only the record, and the discrimination complained of does not appear upon the record, but only from

evidence outside the record.   Hannibal Railroad Co. v. State Board
of Equalization, 64 Mo. 294; Ward v. Board of Equalization, 135 Mo.
309.   (c)   The bank cannot pay the illegal taxes and recover them
by suit.   Robins v. Latham, 134 Mo. 466; Ruby v. Shain, 54 Mo. 207;
Wolf v. Marshall, 52 Mo. 167.   (d)   A defendant who alleges dis-
crimination against itself in the matter of taxation cannot raise such
question of discrimination as a defense in an action by the collector
to collect the taxes, but must resort to a court of equity to restrain
the collection of the excess, on payment or tender of what is admitted
to be due.   State ex rel. v. Western Union Tel. Co., 165 Mo. 502;
State ex rel. Johnson v. Bank, 279 Mo. 228.   (e)   If there were a
remedy at law to prevent the collection of the discriminatory tax or
to recover it after payment, the remedy would not be complete be-
cause it would attain the full end and justice of the case, in that
it does not reach the whole mischief and secure the whole right of
the party in the present time and in the future.   Hubbard v. Slavens,
218 Mo. 619.   (4)   The defendants are the proper and only neces-
sary parties defendant.   Newmeyer v. Railroad Co., 52 Mo. 81; St.
Louis I. M. & S. v. Anthony, 73 Mo. 435.   (5)   The deliberate, in-
tentional, systematic and arbitrary valuation of the plaintiff's prop-
erty at its full value, while other property is deliberately, intention-
ally, systematically and arbitrarily assessed at less than its full value,
is a fraud upon and a discrimination against the fully assessed tax-
payer and is in violation of the State and Federal Constitutions.
Sioux City Bridge Co. v. Dakota County, 260 U. S. 441; First Natl.
Bank v. Christensen, 118 Pac. 778; Spokane Trust Co. v. Spokane
Co., 126 Pac. 54; Washington Water Power Co. v. Kootenai Co., 270
Fed. 369; Taylor v. L. & N. Railroad, 88 Fed. 350; Spokane Railroad
Co. v. Spokane Co., 143 Pac. 306; Raymond v. Chicago Traction Co.,
207 U. S. 20; Cummings v. Natl. Bank, 101 U. S. 153; City Ry. Co.
v. Beard, 293 Fed. 448; Secs. 3 and 4, Art. 10, Mo. Constitution. (a)
Uniformity in taxation means uniformity not only in the rate of
taxation, but also uniformity in the mode of assessment.   City Rail-
way Co. v. Beard, 293 Fed. 448; Sioux City Bridge Co. v. Dakota
Co., 260 U. S. 441; First Natl. Bank v. Christensen, 118 Pac. 778;
Spokane Railroad Co. v. Spokane Co., 143 Pac. 307.   (b)   Provisions
of the Fourteenth Amendment are not confined to the action of the
State through its legislative, executive or judicial authority, but re-
late to all instrumentalities through which the State acts.   Sec. 1,
Art. 14, U. S. Constitution; Raymond v. Traction Co., 207 U. S. 20.
(c)   Nor does the right to assess property at full cash value make
a tax legal where other property is assessed at a fraction of its cash
value.   Washington Water Power Co. v. Kootenai Co., 270 Fed. 369.
(d)   Remedy of the fully assessed taxpayer is not to secure an in-
crease in the assessment of the under-assessed property, but rather to

have the assessment of his property reduced to the level of the under-assessed property. Sioux City Bridge Co. v. Dakota Co., 260 U. S. 441; Taylor v. L. & N. Railroad, 88 Fed. 350. (e) A tax on bank shares is not an excise tax, but a property tax coming under the protection of the Constitution. Spokane Trust Co. v. Spokane Co., 126 Pac. 54. (6) All property in Missouri subject to taxation falls in the same class. State ex rel. Tompkins v. Shipman, 290 Mo. 65. (7) A suit to annul portion of assessment because of fraud is a direct and not a collateral attack. Lovitt v. Russell, 138 Mo. 474; State ex rel. Johnson v. Bank, 279 Mo. 228; Howey v. Howey, 240 S. W. 457; Lieber v. Lieber, 239 Mo. 31; Hamilton v. McLean, 139 Mo. 678; Payne v. O'Shea, 84 Mo. 129; Murphy v. DeFrance, 101 Mo. 151; Liebhardt v. Lawrence, 120 Pac. 222; Ford v. Clendenin, 109 N. E. 124; James v. Young, 206 Pac. 905; 15 R. C. L. 839, sec. 312; Heisinger v. Modern Brotherhood, 179 N. W. 166; Gray Co. v. Hamer, 277 Fed. 155; 23 Cyc. 1062.

*Charles W. Journey* and *John H. Windsor* for respondents.

(1) Under the statutes the shares of banks are to be assessed at their true value in money less the value of real estate, if any, represented by such shares of stock. Sec. 12775, R. S. 1919. (2) A board of equalization, in performing its duties, acts judicially. Secs. 12853, 12820, 12827, R. S. 1919; State ex rel. Johnson v. Merchants & Miners Bank, 279 Mo. 228; State ex rel. Gottlieb v. Western Union Tel. Co., 167 Mo. 502; Black v. McGonigle, 103 Mo. 159; St. Louis Mutual Ins. Co. v. Charles, 47 Mo. 465; Railroad v. Maguire, 49 Mo. 483; 34 C. J. 519, sec. 826. (3) The actions of boards of equalization in fixing assessment values being judicial in their character, the judgments of such boards cannot be attacked in a collateral proceeding except for want of jurisdiction or for fraud. State ex rel. Johnson v. Merchants & Miners Bank, 279 Mo. 228; State ex rel. Ashby v. Lumber Co., 198 Mo. 430; Lovitt v. Russell, 138 Mo. 474; State ex rel. v. Vaile, 122 Mo. 33; Union Depot Co. v. Frederick, 177 Mo. 138. (a) The plaintiff does not question the jurisdiction of either the County Board of Equalization or the State Board of Equalization, nor does it allege sufficient facts to show fraud. Plaintiff states in its petition that the valuation of the shares of stock in plaintiff's institution were assessed on identically the same basis as the shares of stock in other banking corporations in Cooper County. This does not violate the Federal statute prohibiting states from assessing the shares of national banks at a higher rate than other moneyed capital in the hands of citizens employed in competition with the moneyed capital used by national banks. First Natl. Bank v. Chehalis Co., 166 U. S. 440; Davenport Natl. Bank v. Board of Equalization, 123

U. S. 83; National Bank v. Staats, 155 Mo. 55. (b) A collateral attack is an attempt to impeach the judgment by matters *dehors* the record, in an action other than that in which it was rendered; an attempt to avoid, defeat or evade or deny its force and effect in some incidental proceeding not provided by law for the express purpose of attacking it. In fact, any collateral attack is any proceeding which is not instituted for the express purpose of annulling, correcting or modifying a decree or judgment. 34 C. J. 520, sec. 827; Lovitt v. Russell, 138 Mo. 474. (c) If a judgment be attacked for want of jurisdiction the fact must appear on the face of the record. State ex rel. Johnson v. Merchants & Miners Bank, 279 Mo. 228. (4) The plaintiff has an adequate and complete remedy by *certiorari*. Such being the case the injunction will not lie. Bank v. Staats, 155 Mo. 55; State ex rel. v. Springer, 134 Mo. 212; State ex rel. v. Bank of Neosho, 120 Mo. 161; Meyer v. Rosenblaat, 78 Mo. 495; Potosi v. Casey, 27 Mo. 372. (a) When the tax is illegal, one is not obliged to apply for an abatement, unless the statute makes that the sole remedy; but he may contest the tax when attempt is made to collect it. But for a merely excessive or unequal assessment, where no principle of law is violated in making it, and the complaint is of an error of judgment only, the sole remedy is an application for an abatement, either to the assessors or to such statutory board as has been provided for hearing it. The courts either of common law or of equity are powerless to give relief against the erroneous judgments of assessing bodies, except as they may be specially empowered by law to do so. And this principle is applicable to statutory boards of equalization, which are only assessing boards with certain appellate powers, but whose action, if they keep within their jurisdiction, is conclusive except as otherwise provided by law. Cooley on Taxation (2 Ed.) pp. 748, 749; First Natl. Bank of Hannibal v. Meredith, 44 Mo. 504; People's Natl. Bank v. Marye, 107 Fed. 571; Raymond v. Union Traction Co., 207 U. S. 20; Singer Mfg. Co. v. Adams, 165 Fed. 877. Had the plaintiff in the action at bar proceeded by writ of *certiorari*, which is the proper remedy in cases of this nature, the question of multiplicity of suits would not have arisen. 32 C. J. 55, sec. 33. The fact that the assessed valuation of property was unduly high as compared with others in the same class, would be no ground for equitable relief. St. Louis Electric Bridge Co. v. Koeln, 287 S. W. 429. (5) While the plaintiff alleges that the acts of the county assessor, the County Board of Equalization and the State Board of Equalization constitute a discrimination against and a fraud upon the shareholders of plaintiff bank, there is in fact under the law no such discrimination. The Federal statutes only forbid discrimination between the assessment of National Bank shares and other "moneyed capital in the hands of the citizens." The term moneyed capital does

not include ordinary, real or personal property but only that species of capital which come in competition with National Banks. First Natl. Bank v. Chalsis Co., 166 U. S. 440; Merchants Natl. Bank v. Com., 167 U. S. 461; Talbot v. Silverbow Co., 139 U. S. 438; National Bank v. Mayor of Baltimore, 100 Fed. 24; Nevada Natl. Bank of San Francisco v. Dodge, 119 Fed. 57; Natl. Bank of Unionville v. Staats, 155 Mo. 55. (a) The assessment in this case is strictly in accordance with both Federal and State law. First Natl. Bank v. Chalsis Co., 166 U. S. 440; Merchants Natl. Bank v. Com., 167 U. S. 461; Talbot v. Silberbow Co., 139 U. S. 438; Natl. Bank v. Mayor of Baltimore, 100 Fed. 24; Nevada Natl. Bank of San Francisco v. Dodge, 119 Fed. 57; Natl. Bank of Unionville v. Staats, 155 Mo. 55; U. S. Statutes, 5912; Sec. 12775, R. S. 1919.

GRAVES, J.—Plaintiff (appellant) is a national bank, located in Cooper County, Missouri. The defendants are: (1) Collector of the Revenue of Cooper County; (2) Clerk of the County Court of Cooper County; and (3) the judges of the County Court of Cooper County. The action is in equity to enjoin the officers of Cooper County from collecting an alleged illegal tax upon the shares of stock of said bank. The tax is charged to have been upon a fraudulent assessment judgment. To avoid a multiplicity of suits, the bank sues for and in behalf of the shareholders. Counsel, *amici curiae*, in a brief filed, have thus shortly outlined the petition:

"The petition alleges (1) that plaintiff is a corporation engaged in the banking business in Cooper County, Missouri; (2) that defendants are the taxing authorities of Cooper County; (3) that on June 1, 1925, plaintiff made a return under Section 12775 of its assets and listed same at their actual value, to-wit, $90,000; (4) that the Assessor assessed the shares of the plaintiff on the basis of ninety per cent of said $90,000, and, therefore, at ninety per cent of the true value in money of such shares; (5) that the Assessor at the same time assessed all other real and personal property in Cooper County at only seventy-five per cent of its true value in money, and that such other property was of the same class for purposes of taxation as plaintiff's shares and should be subject to the same tax; (6) that the plaintiff appealed therefrom to the County Board of Equalization and was denied relief; (7) that the State Board of Equalization raised the valuation of plaintiff's shares to 100 per cent of their true value in money, but at the same time left all the other property, real and personal, assessed at only seventy-five per cent of its true value in money, and that its action and the action of the Assessor and the action of the County Board of Equalization was a deliberate, systematic, intentional and arbitrary discrimination against the plaintiff and its shareholders; (8) that thereafter a tax was levied, based

upon said assessment of plaintiff's shares at 100 per cent of their true actual value in money, and a tax was levied on all other property on the basis of only seventy-five per cent; (9) that the plaintiff thereafter made a tender of seventy-five per cent of the tax so assessed against its shares; (10) that the Constitution of Missouri provides that all taxes shall be uniform on the same class of property and that all property shall be taxed in proportion to its true value and that the Constitution of the United States provides that no State shall deny to any person the equal protection of its laws; (11) that the taxing authorities deliberately, intentionally, systematically and arbitrarily valued and assessed the plaintiff's shares at 100 per cent of their true value in money and at the same time deliberately, intentionally, systematically and arbitrarily assessed all the other property of the same class in Cooper County at only seventy-five per cent of its value, all in violation of said constitutional provisions; (12) that the plaintiff had exhausted its remedy.

"On these allegations the plaintiff prays that the taxing authorities be enjoined from collecting from it any more than seventy-five per cent of the tax assessed against said shares.

"In short, in looking to those allegations of the petition which go to the merits, the petition alleges as plainly and clearly as can be alleged that the taxing authorities intentionally and systematically valued and assessed and taxed plaintiff's shares at one hundred per cent, while at the same time intentionally and systematically assessing all other property in the county at only seventy-five per cent of its true value, and that plaintiff had sought relief at the hands of all administrative boards created under the statutes for granting relief, and had been denied relief by all such boards.

"And so the plaintiff comes to a court of equity for relief against such intentional and systematic value of its property at 100 per cent, while at the same time undervaluing all other property and assessing it at only seventy-five per cent."

Further details of the petition can be given, if necessary.

To this petition was filed a general demurrer, which was sustained by the trial court and a judgment entered dismissing plaintiff's bill in equity. The questions presented are, therefore, purely questions of law upon the facts admitted to be true by the demurrer.

It is not claimed that the shares of stock were assessed in excess of their cash value, but the real claim is that there has been a fraudulent discrimination against the plaintiff bank and its shareholders, in that all other property in the county was assessed at *only* seventy-five per cent of its cash value, whilst the bank's shares of stock were assessed at their full value. The difference in the tax thus made possible, it is sought to restrain the collection thereof by this action in injunction.

The remedy used by plaintiff is attacked as not being proper by respondents, and numerous other questions raised—all of which can be noted in the course of the opinion.

I.    At the threshold lies·the question of remedy.    Respondents contend that *certiorari* is the sole remedy.    Appellants say such remedy is not adequate, in that it only brings up for review the record and **Remedy.** that the unjust discrimination can only be shown by matters *dehors* the record of any board of equalization.    We shall not encumber this opinion with the discussion of a mass of irrelevant rulings. We shall first get the facts, and then discuss only such cases as have ruled upon a similar state of facts.    There is no claim that there has been any discrimination in assessment of shares as between plaintiff (a national bank) and the state banks or other moneyed institutions in Cooper County, so that Section 5219, United States Statutes, and cases ruling upon such section, are not in this case at all. The gist of this case lies in Subdivision IX of the petition, which reads:

"That the taxing authorities aforesaid deliberately, intentionally, systematically and arbitrarily valued and assessed the plaintiff's property as represented by its shares of stock at one hundred per centum of its true value in money, and deliberately, intentionally, systematically and arbitrarily undervalued and assessed all other property which is subject to an *ad valorem* tax in Cooper County and in the same class for the purposes of taxation, at only seventy-five per centum of its true value in money; that each action by the taxing authorities was a discrimination against and a fraud upon the shareholders of the plaintiff bank and places an unjust and unequal burden of taxation upon the said shareholders, and that that part of the taxes sought to be collected by the defendants from the plaintiff herein, which is based on a valuation and assessment in excess of seventy-five per centum of the true value in money of the shares of stock in the plaintiff bank and which amounts to $401.08, is illegal and void, because the said deliberate, intentional, systematic and arbitrary undervaluation of all other property and its assessment at seventy-five per centum.of its true value in money, and the said deliberate, intentional, systematic and arbitrary valuation of the property of the plaintiff, as represented by its shares of stock at one hundred per centum of its true value in money, violates Section 3 of Article I of the Constitution of Missouri requiring uniformity of taxation upon the same class of subjects within the territorial limits of the authority levying the tax, and violates Section 4 of Article X of the Constitution of Missouri requiring that all property shall be taxed in proportion to its value, and violates Section 1 of Article XIV of

the Constitution of the United States in that it deprives the plain-iff's shareholders of the equal protection of the laws and deprives them of their property without due process of law.''

The facts thus pleaded are the admitted facts of this case. That such facts show a deliberate, unlawful and fraudulent discrimination as between and against plaintiff bank and its shareholders and other property owners in Cooper County (the taxing district in this case) there can be no question. That *certiorari* to the State Board of Equalization or to the County Board of Equalization would be wholly inadequate, there can be no question. The real gist of this case lies in matters entirely *dehors* the record of these boards of equalization. They go back to the assessor of the county, who is an important cog in the wheel of assessment and taxation. He is one of the taxing authorities of the county and state. His acts enter into the legal scheme of assessment of property to be taxed *ad valorem,* and his acts (righteous or fraudulent) enter into the final judgment of assessment.

Upon the question of *certiorari* being an adequate remedy, we are cited to Bank v. Staats, 155 Mo. 55; State ex rel. v. Springer, 134 Mo. 212; State ex rel. v. Bank of Neosho, 120 Mo. 161; Meyer v. Rosenblatt, 78 Mo. 495, and Potosi v. Casey, 27 Mo. 372. But these cases do not rule a state of facts that we have in the case before us. The uppermost question here (stated, supra) is not in those cases at all, except Bank v. Staats, supra. State ex rel. v. Bank of Neosho was a suit for taxes, and not one in equity asking for relief against fraud. The Staats case appears to have been in equity (the grounds of the equities not definitely stated) and is adverse to the contention of appellant here. It must be said, however, that there is really no discussion of fraud in that case. It really rode off upon the question that excessive valuations can only be reached by appeals to the different boards of equalization. The Staats case is against the weight of authority elsewhere and against our latter cases. In separating the wheat from the chaff, it must not be overlooked that there are two lines of cases to be considered. One line of cases is where there is a charge of fraud, which entered into the very assessment judgment and created thereby unlawful discrimination as between taxpayers of the same general class. The suit before us belongs to this class. The other class of cases is where by some mishap, oversight or otherwise (excepting fraud), the taxpayer has been overassessed by the assessor. In these cases it has been ruled that the taxpayer should follow the statutes and appeal, and that there is no remedy in equity.

Mr. Chief Justice TAFT, when on the Circuit, in the case of Taylor v. L. & N. Railroad Co., 88 Fed. l. c. 373, has well worded the difference between the two lines of cases, thus:

''We find nothing in these cases which should change our view, already expressed, of the effect of the Cummings case. They merely

emphasize the point that equity will not relieve against an assessment merely because it happens to be at a higher rate than that of other property; that such inequalities, due to mistake, to the fallibility of human judgment, or to other accidental causes, must be borne, for the reason that absolute uniformity cannot be obtained; that, in other words, what may be called 'sporadic cases of discrimination' cannot be remedied by the chancellor. He can only interfere when it is made clear that there is, with respect to certain species of property, systematic, intentional, and unlawful undervaluation for taxation by the taxing officer, which necessarily effect an unjust discrimination against the species of property of which the complainant is an owner. The reason for the distinction is obvious. The occasional and accidental discriminations are inevitable in every assessment, and are not likely to continue, because not the result of an illegal purpose on the part of any one. If equitable interference in such cases could be invoked, the obstruction to the collection of taxes would be so frequent as to be intolerable. More than this, an action to enjoin a tax is a collateral attack upon the judgment of a *quasi*-judicial tribunal; and it cannot be justified except on the ground of an obvious violation of law, or something equivalent to fraud. It does not lie where the injury complained of arises only from the erroneous, but honest, judgment of the lawfully constituted tax tribunal. The interference by the chancellor in the case at bar and in the Cummings case rests on something·equivalent to fraud in the tribunal imposing the tax. The various boards whose united action is by law intended to effect a uniform assessment of all classes of property are to be regarded as one tribunal, and the whole assessment on all classes of property is to be regarded as one judgment. If any board which is an essential part of the taxing system intentionally, and therefore fraudulently, violates the law, by uniformly undervaluing certain classes of property, the assessment by other boards of other classes of property at the full value, though a literal compliance with the law, makes the whole assessment, considered as one judgment, a fraud upon the fully-assessed property. And this is true although the particular board assessing the complainant's property may have been wholly free from fault or fraud or intentional discrimination.''

But beyond this we have ruled in this State that these assessments are in the nature of, at least, *quasi*-judicial judgments and cannot be impeached collaterally, but we have not ruled that the injunction of the collection of a tax levied upon an illegal or discriminating assessment judgment founded upon fraud (actual or legal) was a collateral attack upon the assessment judgment. The courts have not always been clear in stating the rule as to collateral attack. But we have upheld these orders of boards of equalization, as against collateral attack, upon the theory that they were as court judgments. [See

State ex rel. Johnson v. Bank, 279 Mo. 228, for collation of the cases.] We should likewise destroy them for fraud if shown.

Reverting to the Staats case, supra, we reiterate that both before and after that ruling this court has spoken differently, if we can say that the Staats case precludes an action in equity based upon fraud in the concoction of the assessment judgment. It is really hard to say just what is ruled in the Staats case. It was in equity, but the exact grounds are not stated. It seemingly goes off on certain statutes, but these statutes do not preclude equity from interfering where fraud is charged. These statutes cover only one of the two lines of cases, supra, so clearly pointed out and distinguished by Judge TAFT.

Prior to the Staats case, in the case of State ex rel. v. Vaile, 122 Mo. l. c. 47, BLACK, J., said:

"A board of equalization in performing its duties, acts judicially, and its orders cannot be impeached collaterally, *save for want of jurisdiction or for fraud.* [Black v. McGonigle, 103 Mo. 193, and cases cited; Black on Tax Title (2 Ed.) sec. 141.] But it is a board of special and limited powers, and when it steps outside of its jurisdiction its acts are void." Here is a clear recognition of the view that these assessment judgments may be attacked for fraud, or, in other words, in equity for fraud.

In State ex rel. v. Western Union Tel. Co., 165 Mo. 516 (after the Staats case), this court approved the rule announced by Mr. Justice MILLER. We there said: "The principle here contended for is tersely expressed by Mr. Justice MILLER in the case of National Bank v. Kimball, 103 U. S. 732, as follows: 'It is held in these opinions that when the inequality of valuation is the result of a statute of the State designed to discriminate injuriously against any class of persons or any species of property, a court of equity will give appropriate relief; *and also where, though the law itself is unobjectionable, the officers who are appointed to make assessments combine together and establish a rule or principle of valuation, the necessary result of which is to tax one species of property higher than others, and higher than the average rate, the court will also give relief.*'"

In this same Western Union Tel. Co. case, 165 Mo. l. c. 517, this court approved a further rule of the Federal court in this language: "But aside from this the cases relied on also establish another rule, which is voiced by Mr. Justice FIELD, in Stanley v. Supervisors, 121 U. S. 535, that when the statutes of a State provide a board for the correction of errors and irregularities of assessors in the assessment of property for the purpose of taxation, the official action of that body is judicial in character and its judgments are not open to attacks collaterally, but, 'When the overvaluation of property has arisen from the adoption of a rule of appraisement which conflicts with a constitutional or statutory direction, and operates unequally,

not merely on a single individual but on a large class of individuals or corporations, a party aggrieved may resort to a court of equity to restrain the exaction of the excess, upon payment or tender of what is admitted to be due.' To the same effect are Cummings v. National Bank, 101 U. S. 153; Balfour v. City of Portland, 28 Fed. 738; Pelton v. National Bank, 101 U. S. 143; Trustees of Railroad v. Guenther, 19 Fed. 393; Railroad v. Board, 67 Fed. 411."

This is the exact action we have before us now. It is asking that the collector be restrained from enforcing the collection of the illegal portion of the tax, which illegal portion was the outgrowth of a violation of both our Constitution and our statutes as to the assessment of property by the assessor, and which amounted to a fraud entering into the very make-up of the assessment judgment. Here it stands admitted that the assessor, in clear violation of law, assessed plaintiff's property at ninety per cent of its true cash value and assessed all other property at only seventy-five per cent of its true cash value. We should say that all bank stocks (plaintiff's and that of others) were assessed at ninety per cent of the cash value. This discrimination violates the constitutional provisions pleaded supra, and also Section 12802, Revised Statutes 1919, all set out in full, infra.

But going back to the Missouri cases. In State ex rel. Johnson v. Bank, 279 Mo. l. c. 238, after what we thought a rather full review of the Missouri cases, we said:

"There is no doubt that the State Board of Equalization was acting within its jurisdiction when it fixed values for bank stock in Jasper County, and its judgment cannot be attacked in this collateral proceeding.

"In State ex rel. v. Vaile, 122 Mo. l. c. 47, BLACK, P. J., said: 'A board of equalization in performing its duties, acts judicially and its orders cannot be impeached collaterally, save for want of jurisdiction or for fraud. [Black v. McGonigle, 103 Mo. 193, and cases cited; Black on Tax Titles (2 Ed.), sec. 141.] But it is a board of special and limited powers and when it steps outside of its jurisdiction its acts are void.'

"If attacked for want of jurisdiction, the fact must appear on the face of the record. So appearing, the judgment is void, and a void judgment may be attacked collaterally. But if the judgment is only voidable and not void it can only be attacked in a direct proceeding. This is hornbook law.

"Judgments may be set aside for fraud, but the fraud must be such as entered into the very concoction of the judgment. But we need not discuss this, because a judgment cannot be attacked for fraud in a collateral proceeding. It must be by a direct bill in equity."

The Johnson case, supra, was a legal action to collect delinquent taxes, and in such action the assessment judgment was attacked.

This we said could not be done in a collateral action, but must be done in a direct proceeding in equity. The present suit is one in equity to enjoin the collector from attempting to collect a tax based upon an assessment judgment concocted in fraud and in violation of law. The collector is relying upon this fraudulent assessment judgment, and plaintiff is in equity attacking it.

All the facts are pleaded, including the constitutional provisions violated. After the full pleading of the facts, the prayer is to enjoin the collection of that portion of the tax which was occasioned by the fraud in the assessment judgment. In other words, the petition is a direct attack upon this assessment judgment and seeks to cancel at least a portion of it.

We had in view, however, at this point, just a showing that the Staats case was not in accord with our own opinions. We have never taken from our courts of equity the power to annul judgments on the ground of fraud. If we give the actions of these boards of equalization the status of a judgment, as we do, equity should and would reach them as it reaches the judgments of courts. The authorities here and elsewhere we discuss more fully later. It is clear that, after the taxes have been assessed upon an assessment judgment which is tinctured with fraud and illegal action, the collector of such taxes, under such assessment judgment, is the principal representative of the government (State and county) in an effort to uphold the assessment judgment, and a suit against him is a direct attack upon the judgment of assessment that he is trying to uphold and enforce. The result of this case would amount to a cancellation and absolute destruction of a portion of this assessment judgment. But, as suggested, supra, the authorities will be noted more fully in a succeeding paragraph.

II. The questions of remedy, or forum, and collateral attack upon the assessment judgments of boards of equalization run together. Both are usually found in the same case, and in the discussion of our state cases, supra, we have followed along that line. Cases from other jurisdictions will be treated in the same manner. Usually where such cases give

**Correction of the Wrong.**

an action in equity as the remedy, or equity as the forum, there will be found a discussion of collateral attack. So, also, in cases from the Federal courts there will be found in addition to the matters just above mentioned, the question of unjust discrimination and equal protection under the law, as provided for by virtue of the Fourteenth Amendment to the Federal Constitution. The questions are so closely related, and so closely interwoven in the cases, that we shall pursue the indiscriminate use of the cases rather than attempt a classification

in which classification some (indeed many) cases would appear under all of the three or four heads we might make in the classification.

It will be well, however, to have before us our Missouri constitutional and statutory provisions, as we take up cases from other jurisdictions. As to uniformity of taxes, Section 3 of Article X of the Constitution says:

"Taxes may be levied and collected for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and all taxes shall be levied and collected by general laws."

As to how property (subject to *ad valorem* taxation) shall be taxed, Section 4 of Article X says: "All property subject to taxation shall be taxed in proportion to its value."

We have ruled that Section 4 of Article X of the Constitution makes but one class of taxable property—"So far as the basis of taxation is concerned Section 4 of Article X puts *all* property into a single class." [State ex rel. v. Shipman, 290 Mo. 1. c. 77.]

Our statute (R. S. 1919, sec. 12802) says: "The assessor shall value and assess *all* property on the assessor's books according to its *true value in money* at the time of the assessment; and all other personal property shall be valued at the cash price of such property at the time and place of listing the same for taxation."

Section 1, Article XIV, of the Federal Constitution reads:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

The Missouri "due process" provision is Section 30 of Article II of Constitution of 1875, and reads: "That no person shall be deprived of life, liberty or property without due process of law."

From the foregoing it will be discovered that the Missouri provisions are much like those in many other States. Ohio has provisions much like ours, and these provisions were before the United States Supreme Court in Cummings v. National Bank, 101 U. S. 1. c. 157, whereat Mr. Justice MILLER said:

"Independently of this statute, however, we are of opinion, when a rule or system of valuation is adopted by those whose duty it is to make the assessment, which is designed to operate unequally and to violate a fundamental principle of the Constitution, and when this rule is applied not solely to one individual, but to a large class of individuals or corporations, that equity may properly interfere to restrain the operation of this unconstitutional exercise of power. That is precisely the case made by this bill, and if supported by the testimony, relief ought to be given."

The statute referred to in the above case was one expressly providing for injunction against taxes illegally assessed. The court says the same remedy existed without the statute. Following the Cummings case, supra, we have Raymond v. Chicago Traction Co., 207 U. S. l. c. 37, whereat it is said:

"We are also of the opinion that the case is one over which equity has jurisdiction. In Cummings v. National Bank, 101 U. S. 153, this court held that the case was one properly brought in equity. It was to restrain the collection of a tax. While the court held that the position of the bank as trustee entitled it to maintain an action in equity and also under the statute of Ohio, it was further held (page 157): 'Independently of this statute, however, we are of opinion, when a rule or system of valuation is adopted by those whose duty it is to make the assessment, which is designed to operate unequally and to violate a fundamental principle of the Constitution, and when this rule is applied not solely to one individual, but to a large class of individuals or corporations, that equity may properly interfere to restrain the operation of this unconstitutional exercise of power.' We have in the case at bar similar facts. A system of valuation was adopted and applied to a large class of corporations, differing wholly from that applied to other corporations of the same class, and resulting in a discrimination against the appellee of the most serious and material nature. It is not a question of mere difference of opinion as to the valuation of property, but it is a question of difference of method in the manner of assessing property of the same kind. Although the law itself may be valid and provide for a proper valuation, yet if, through mistake on the part of the State, through its board of equalization and while acting as a *quasi*-judicial body, the board erred in the method to be pursued in relation to the corporations now before us, the mistake is one which may be corrected in equity."

Judge TAFT (Circuit Judge) in Taylor v. Louisville & Nashville Railroad Co., 88 Fed. 350, most thoroughly established the rule that where there is pleaded, that with respect to certain species of property there has been a "systematic, intentional and unlawful under-valuation for taxation by the taxing officers, which necessarily effect an unjust discrimination against the species of property of which plaintiff is an owner," then such plaintiff has selected the right remedy and the right forum when he goes to a court of equity for relief. Judge TAFT's opinion in the Taylor case, supra, has been very largely approved and followed, both in State and Federal jurisdictions. As Chief Justice it has fallen to his lot to make clear just what relief should be granted, and with clearness he has done so in Sioux City Bridge v. Dakota County, 260 U. S. l. c. 445. He reiterates the established rule as to remedy or forum, and adds thereto. The case came

317 Mo. Sup.—83.

up from the Supreme Court of Nebraska. The Chief Justice in 260 U. S. 445, et seq., says:

"In the case of Sunday Lake Iron Co. v. Wakefield, 247 U. S. 350, 352, 353, this court said: 'The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. And it must be regarded as settled that intentional systematic undervaluation by state officials of other taxable property in the same class contravenes the constitutional right of one taxed upon the full value of his property. [Raymond v. Chicago Union Traction Co., 207 U. S. 20, 35, 37.]' Analogous cases are Greene v. Louisville & Interurban Railroad Co., 244 U. S. 499, 516, 517, 518; Cummings v. National Bank, 101 U. S. 153, 160; Louisville & Nashville Railroad Co. v. Bosworth, 209 Fed. 380, 452; Washington Water Power Co. v. Kootenai County, 270 Fed. 369, 374.

"The charge made by the Bridge Company in this case was that the State, through its duly constituted agents, to-wit, the county assessor and the county board of equalization, improperly executed the Constitution and taxing laws of the State and intentionally and arbitrarily assessed the Bridge Company's property at 100 per cent of its true value and all other real estate and its improvements in the county at fifty-five per cent.

"The Supreme Court does not make it clear whether it thinks the discrimination charged was proved or not, but assuming the discrimination, it holds that the Bridge Company has no remedy except 'to have the property assessed below its true value raised, rather than to have property assessed at its true value reduced.' The dilemma presented by a case where one or a few of a class of taxpayers are assessed at 100 per cent of the value of their property in accord with a constitutional or statutory requirement, and the rest of the class are intentionally assessed at a much lower percentage in violation of the law, has been often dealt with by courts and there has been a conflict of view as to what should be done. There is no doubt, however, of the view taken of such cases by the Federal courts in the enforcement of the uniformity clauses of state statutes and constitutions and of the equal-protection clause of the Fourteenth Amendment. The exact question was considered at length by the Circuit Court of Appeals of the Sixth Circuit in the case of Taylor v. Louisville & Nashville Railroad Co., 88 Fed. 350, 364, 365, and the language of that court was approved and incorporated 'in the decision of this court in Greene v. Louisville & Interurban Railroad Co., 244 U. S. 499, 516, 518. The conclusion in these and other Federal authorities is that such a result as that reached by the Supreme Court of Nebraska is

to deny the injured taxpayer any remedy at all, because it is utterly impossible for him by any judicial proceeding to secure an increase in the assessment of the great mass of underassessed property in the taxing district.   This court holds that the right of the taxpayer whose property alone is taxed at 100 per cent of its true value is to have his assessment reduced to the percentage of the value at which others are taxed even though this is a departure from the requirement of statute.   The conclusion is based on the principle that where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law.   In substance and effect the decision of the Nebraska Supreme Court in this case upholds the violation of the Fourteenth Amendment to the injury of the Bridge Company.   We must, therefore, reverse its judgment.''

We most heartily concur in these views as to the relief to be granted, as we do in the rule that equity will grant relief under the facts given.   The rule applies not only to the Federal Constitution (14th Amendment), but to the uniformity constitutional and statutory provisions of the several states.   The Chief Justice has cited in our quotation, supra, so many of the Federal cases which support the rule, that we shall not go further.   He could have cited others, as might we, but these suffice.

State courts have taken the same view.   Thus in First National Bank v. Christensen, 118 Pac. 1. c. 780, the Supreme Court of Utah says:

''The question of inequality and want of uniformity in the assessment and taxation is more serious.

''Inequality and lack of uniformity may result not only by applying different rates of assessment, but also from misconduct of taxing officers by which property of one person, or a class of persons, or a particular class of property, is intentionally assessed at a valuation greater in proportion to its real or cash value than is placed on the general mass of other taxable property.

''That is, though the Constitution and the statute require the taxing officers to assess all taxable property at 'its full cash value,' yet, should taxing officers of a county assess real estate, live stock, merchandise and chattels at fifty to seventy per cent of their actual or cash value, and moneys or shares of stock in manufacturing or industrial enterprises, or investments, at their actual or cash value, the assessment would not be equal or uniform.

''In such case, those whose property was intentionally assessed at a higher percentage or valuation than was placed on the general mass of taxable property in the county may invoke the aid of courts to compel the taxing officers to reduce the excessive assessment so made, to the same proportion of value as was placed upon the general mass

of other taxable property in the county. A denial of such right results in inequality and a want of uniformity in the assessment and taxation. [Lively v. M. K. & T. Ry. Co. of Texas, 102 Tex. 545, 120 S. W. 852; Raymond v. Chicago Traction Co., 207 U. S. 20, 28 Sup. Ct. 7, 52 L. Ed. 78; Taylor v. Louisville & N. Railroad Co., 88 Fed. 364, 31 C. C. A. 537; 37 Cyc. 737.]

"If, therefore, plaintiff's shares of stock were assessed at a value greater in proportion to that placed upon the general mass of taxable property in the county, it is entitled to have that value reduced to the proportion placed on such mass of taxable property."

In Spokane & Eastern Trust Co. v. Spokane County (Supreme Court of the State of Washington), 126 Pac. l. c. 55, it is said:

"Section 2, Article 7, of the Constitution, commands that: 'The Legislature shall provide by law a uniform and equal rate of assessment and taxation on all property in the State, according to its value in money, and shall prescribe such regulations by general law as shall secure a just valuation for taxation of all property, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property.' As was said in State ex rel. Wolfe v. Parmenter, 50 Wash. 164, 96 Pac. 1047, 19 L. R. A. (N. S.) 707: 'It is just as imperative that taxation shall be uniform and equal upon all property as it is that all property shall be taxed.' There is neither uniformity nor equality where all kinds of property save one are intentionally, and in pursuance of a fixed and definite policy, assessed at less than forty per cent of its full and fair value, whilst that class of property is intentionally assessed at sixty per cent of such value. The facts pleaded do not show an erroneous valuation or a difference in judgment as to a correct measure of value, but rather an intentional and arbitrary discrimination against a particular class of property. Such an arbitrary policy is vicious in principle, violative of the Constitution, and operates as a constructive fraud upon the rights of the property holder discriminated against. In such cases equity will grant relief. [Andrews v. King County, 1 Wash. 46, 23 Pac. 409, 22 Am. St. 136; Case v. San Juan County, 59 Wash. 222, 109 Pac. 809; Doty Lumber & Shingle Co. v. Lewis County, 60 Wash. 428, 111 Pac. 562, Ann. Cas. 1912B, 870; State ex rel. O. R. & N. Co. v. Clausen, 63 Wash. 535, 116 Pac. 7; Savage v. Pierce County, 123 Pac. 1088; First National Bank v. Christensen (Utah), 118 Pac. 778.]

"The judgment is reversed, with directions to permit respondents to plead further, if they so desire."

We agree with the Washington court. The facts stated constitute fraud, and not only so, but fraud in the very concoction of the assessment judgment. In the case before us it stands admitted that bank stock was assessed by the Assessor of Cooper County at ninety per

cent of its true value, while the same man assessed all other taxable property at seventy-five per cent of its true value. This constitutes a legal fraud against the owners of bank stock. It constitutes an unjust discrimination, and is a denial of the equal protection of the laws.

The Supreme Court of Washington in Spokane I. E. Railroad Co. v. Spokane County, 143 Pac. l. c. 309, reiterates and approves its ruling in Spokane & Eastern Trust Co. v. Spokane County, 70 Wash. 48, 126 Pac. 54.

III.   We suggested, supra, that we would discuss further the character of this proceeding (the instant case) as to whether or not it is a direct or collateral attack upon the assessment judgment.

**Direct Attack.** That the petition is one seeking relief in equity there can be no question. It clearly alleges facts that show fraud and violation of law (constitutional and statutory) in the very concoction of the assessment judgment. Where there is more than one body participating in making the assessment judgment, the fraud of one party, or one body, makes fraud in the very concoction of the judgment. This has been several times ruled by the Federal court. "The various boards whose united action is by law intended to effect a uniform assessment on all classes of property are to be regarded as one tribunal, and the whole assessment on all classes of property is to be regarded as one judgment. If any board which is an essential part of the taxing system intentionally, and, therefore fraudulently, violates the law, by uniformly undervaluing certain classes of property, the assessment by other boards of other classes of property at the full value, though a literal compliance with the law, makes the whole assessment, considered as one judgment, a fraud upon the fully-assessed property." [Taylor v. L. & N. Railroad Co., 88 Fed. l. c. 374; Washington Water Power Co. v. Kootenai County, 270 Fed. l. c. 375 and 376; Greene v. Louisville & I. R. Co., 244 U. S. 501.]

In Missouri, the greatest factor in the making of the assessment judgment is the county or township assessor. In the instant case it is the county assessor. Fraud upon his part vitiates at least all that portion of the assessment judgment which makes an unlawful and fraudulent discrimination as between taxpayers of the same class. In truth, the pleaded facts in plaintiff's bill in equity shows fraud in the very concoction of the assessment judgment. The action seeks to have held for naught a very substantial part of this assessment judgment, and in our judgment is a direct attack upon it, as suggested in State ex rel. Johnson v. Bank, 279 Mo. l. c. 238.

In 15 Ruling Case Law, page 839, section 312, a direct attack upon a judgment is thus defined: "A direct attack on a judgment is an attempt to amend, correct, reform, vacate, *or enjoin the execution of*

*the same in a proceeding instituted for that purpose."* (The italics in the quotation are ours.)

The instant case is a proceeding instituted to enjoin the full execution of the assessment judgment. It is a direct proceeding seeking to have declared void a substantial portion of this assessment judgment. A judgment for plaintiff in this action would make void and of no effect a substantial portion of this assessment judgment. In fact, there would be left a new judgment as to the amount of the assessment of shares of bank stock in Cooper County.

The same authority (15 R. C. L. p. 760, sec. 214) says: "Fraud is the arch enemy of equity, and a court of equity will relieve against a judgment obtained by imposition or fraud. A judgment given and received for a fraudulent purpose is tainted with fraudulent intent, and cannot be used to affect any rights of those in a position to question it. The power of courts of equity in granting such relief is inherent, and frequent applications to enjoin judgments were made in equity before the practice of awarding new trials was introduced into the courts of common law."

So, also in 23 Cyc. 1062: "If an action or proceeding is brought for the very purpose of impeaching or overturning the judgment, it is a direct attack upon it."

Every line in the petition here shows a blow at the assessment judgment for fraud. It only strikes at a part of it, but as to this, as Judge TAFT has suggested in the cases cited and quoted from, supra, it would be a hardship to strike down the whole judgment and hold up all taxes. Usually fraud vitiates the whole judgment, and it is public policy alone which suggested to Judge TAFT the relief to be granted in these cases. But it suffices to say that the bill is a direct assault and attack upon this assessment judgment.

The Kansas Court in Martin v. Gray, 19 Kan. l. c. 466, has thus defined a direct attack upon a judgment: "Proceedings instituted for the purpose of destroying, impairing, or modifying the force or effect of a judgment for all cases, such as proceedings to reverse, vacate, set aside, declare void, suspend, *modify, or perpetually enjoin a judgment,* are direct proceedings." (The italics are ours.) Our action is to enjoin a portion of the assessment judgment, or to modify it. The Martin case and the above quotation from it have been recently approved in James v. Young, 206 Pac. l. c. 906.

Vanfleet's Collateral Attack on Judicial Proceedings, sec. 2, page 4, thus defines direct attack:

"A direct attack on a judicial proceeding is an attempt to avoid or correct it in some manner provided by law.

"Illustrations.—A motion for a new trial or for a *venire de novo;* a motion in the cause to vacate, modify or correct the judgment according to the statute or the practice of the court; appeals, writs of

error, *certiorari, audita querela* and prohibition; petitions for rehearing and bills of review; bills in equity or complaints and petitions under the codes to set aside, vacate, modify or correct judgments for fraud, accident, mistake or excusable neglect, are some of the modes provided by law for avoiding or correcting judgments, and are direct attacks with which this work has nothing to do."

In Gray County, Texas, v. Hamer, 277 Fed. 1. c. 155, the second syllabus reads: "A suit commenced in a state district court of Texas to restrain enforcement of an order of a county commissioners' court allowing a claim in favor of defendant, and directing issuance of warrants in payment thereof, which order, under the state decisions, constitutes a judgment, held a direct and not a collateral attack on the order, and properly brought; the district court being given supervisory control over commissioners' courts by Const. Tex., art. 5, sec. 8."

So we conclude that this suit is a direct attack on the assessment judgment. When the full petition is read, no other conclusion can be reached. With this and the foregoing rulings there is left but little more to say, although appellant has briefed other matters. What we have said, however, answers all the contentions of respondents that are worthy of note. In fact, respondents seem to have a desire to have the real issue determined, if the remedy is the proper one.

IV. As we have previously said, our statutes have not prohibited courts of equity in Missouri from striking down judgments for fraud. Such power is yet a part of our equity jurisdiction.

What we have said in the paragraphs, supra, cover the substantial contentions of the respondents. We have therein ruled: (1) that this is a direct attack upon the assessment judgment for fraud in the concoction thereof; (2) that the facts pleaded, if proved after answer and trial, would require the enjoining of any action toward enforcing a substantial part of such assessment judgment, and thereby a cancellation thereof; (3) that the demurrer to the petition was improperly sustained by the trial court; (4) that the action of the assessor was a fraud entering into the very concoction of the assessment judgment, and such fraud follows the judgment and is a part thereof through both the county and state boards of equalization; and (5) that the trial court having erred in sustaining the demurrer, as stated supra, the judgment must be reversed and the cause remanded to be further proceeded with in accordance with the views as expressed in this opinion.

There is no reason why bank stock should be assessed at its full value and all other property at only seventy-five per cent of its full value. Such action is not only a fraud upon the taxpayers who are thus assessed the full value of their property, but it is a violation of

the uniformity and due-process clauses of our State Constitution, as well as a violation of the Fourteenth Amendment to the Federal Constitution. The substantial citizens of Missouri do not want and have not asked for this unjust discrimination as between the taxpayers of the State. Let even-handed justice be done to all taxpayers.

Let the judgment be reversed and the cause remanded, as aforesaid. All concur.