Parker-Washington Company v. Dodd.

---

PARKER-WASHINGTON COMPANY, Appellant, v. ELLEN LOUISE TIFFANY DODD, EDWIN M. DODD, JOHN R. TIFFANY, DEXTER TIFFANY, Trustee, AMELIA CORRINE RICH, RICH REALTY & INVESTMENT COMPANY, RICH CONSTRUCTION COMPANY, and COMMONWEALTH CONSTRUCTION COMPANY.

Division One, July 31, 1924.

1. **SERVICE: Unverified Return: Hearsay.** The unverified statement in his return of a person who is not designated by the law as the person authorized to serve a notice is pure hearsay.

2. **SPECIAL TAX BILL: Service of Notice: Upon Trustee: By Stranger.** The charter required that notice of the issuance of a special taxbill be served "upon the party or parties named in such tax bill," by the city marshal, "in the manner provided by law for the service of writ of summons in civil cases." The notice was addressed: "To Ellen Louise Dodd, wife of Edwin M., John K. Tiffany, Tr.," and at that time John R. Tiffany, as trustee for Ellen Louise Tiffany Dodd, held the dry legal title to the lots. The unverified return certified that the notice was served "upon Ellen Louise Dodd by delivering a duplicate copy thereof to John K. Tiffany, Tr.," and was signed by a person who is not shown to have been city marshal, nor did the return state that it was served in the name or by authority of the city marshal. *Held*, that the notice was not served in the manner provided by law for service of a writ of summons in a civil case, nor would service upon the trustee have been service upon the owner of the property, Ellen Louise Dodd, nor was the return competent proof of service upon any one, the unverified statement being pure hearsay.

Parker-Washington Company v. Dodd.

3. ———: ———: Purpose: Maturity of Installments: Premature Suit. The provisions of the charter of St. Louis in force in 1903 relating to the giving of notice of the issuance of special tax bills, payable in installments, make it plain that such notice was not required merely for the purpose of starting the accrual of interest, but to fix the dates of maturity of the several installments. Therefore, where no notice of the character required by the charter has been given, a suit to enforce the special tax bills as liens on the lots is premature.

4. ———: ———: Upon Non-Resident. The charter of St. Louis in force in 1903 made no provision for the service of notice on non-residents, nor did it make any exception of them with respect to giving notice of the issuance of a special tax bill against lots in the city owned by them.

5. ———: Inequalities of Assessment. The charter required one-fourth of the cost of a street improvement to be assessed according to the front-foot rule and three-fourths according to area. It also provided that the boundaries of the assessment district shall be a line drawn "midway between the street to be improved and the next parallel or converging street on each side of the street to be improved;" if the property adjoining the street is divided into lots, the district line shall be so drawn as to include the entire depth of all lots fronting on the street; if there is no parallel or converging street on either side, the district lines shall be drawn three hundred feet from and parallel to the street; but if there be a parallel or converging street on one side of the street to be improved, the district line on the other side shall be drawn parallel to the street and "at the average distance of the opposite district line." Assuming that the enactment of an ordinance designating the street to be improved would automatically establish, by this charter provision, the boundaries of the assessment district, the council enacted an .ordinance requiring Gravois Avenue to be improved for several blocks, and no ordinance fixing the boundaries of the benefit district was enacted, but the assessor of special taxes undertook to lay off its boundaries according to the charter. provisions. Gravois Avenue runs southwesterly, and crossing it are two other streets which intersect each other at right angles. The result is a right-angle triangle of which Gravois Avenue forms the base. The assessor treated these two other streets as constituting "the next parallel or converging street" to Gravois, and endeavored to draw a line midway between them and the avenue. The result was gross inequalities. In block 1387, in which defendants' lots are situate, the district line was drawn at a distance varying from 150 to 250 feet from Gravois. Their lots did not communicate with Gravois, or any other street, except by alleys; the boundary line

where it crossed them was 250 feet from the improvement, while immediately across the street the distance between the improvement and boundary varied from 50 to 125 feet. The boundaries of the district as a whole lay for the most part within 125 feet or less of Gravois Avenue. *Held,* that the assessments as made operated to tax the land owners disproportionately to each other and to the benefits conferred, and defendants will suffer from such inequalities if the tax be collected as assessed. *Held,* also, without determining whether the boundaries of the assessment district as laid out by the assessor conformed to the requirements of the charter, the present charter wisely commits to the municipal legislature the power to determine the benefit district with reference to each particular public improvement.

Headnotes 1 to 4: Municipal Corporations, 28 Cyc. 1169 (1926 Anno).
Headnote 5: Municipal Corporations, 28 Cyc. 1122, 1156, 1161.

Appeal from St. Louis City Circuit Court.—*Hon. William A. Taylor,* Judge.

AFFIRMED.

*Hart & Hart* for appellant.

(1) The assessment district was properly laid out. Charter, sec. 14, art. 4. (2) Filing of the suit was sufficient notice of the issuance of the tax bills and demand for payment. Eyermann v. Provenchere, 15 Mo. App. 256; Bambrick v. Campbell, 37 Mo. App. 460; Charter, sec. 25, art. 14; Construction Co. v. Withnell, 190 Mo. App. 40. (3) The suit was not barred by the Statute of Limitations. Charter, p. 384; R. S. 1909, sec. 9849; Fruin v. Meredith, 145 Mo. App. 586; Barber v. Meservey, 103 Mo. App. 186; Construction Co. v. Cole, 205 Mo. 49, 63. (4) One who is liable to pay the tax cannot restrain its collection on the ground that it is excessive without tendering what is due. State ex rel. v. Flad, 26 Mo. App. 500; Boonville ex rel. v. Stephens, 230 Mo. 339; Overall v. Ruenzi, 67 Mo. 203, 207; Dickhaus v. Olderheade, 22 Mo. 78. (5) The work was done in accordance with the contract and has gone into the betterment of the property of the defendants and should be paid for. Fruin v. Meredith, 145 Mo. App. 586; Sheehan v. Owens, 82 Mo. 458.

*David Goldsmith* for respondents.

(1)   There can be no recovery, because the action was prematurely brought.   The special tax bill sued upon did not become due or payable under the charter.   Rombauer's Revised Code of St. Louis, art. 4, sec. 25, pp. 388, 384.   There can be no recovery in an action prematurely brought.   Heard v. Ritchie, 112 Mo. 512; Mason v. Bernard, 36 Mo. 391.   There was no competent evidence of due service of the notice of the issuance of the tax bill sued upon:   (a)  because the return of service was not made by the marshal;  (b) because the return by a stranger was not proof of service; and (c) because the return offered as proof of service did not show proof of service in the manner prescribed by the charter.   (2)   The assessment district was not established in accordance with the charter, and the tax bills are therefore void.   (3) The special tax bills sued upon constitute the taking of property without due process of law, contrary to the Fourteenth Amendment of the Constitution of the United States.   Gast v. Granite Co., 240 U. S. 55; Whitnell v. Construction Co., 243 U. S. 633.

RAGLAND, J.—This is a suit on two special tax bills for assessments levied respectively against a part of lot 46 and a part of lot 47, in City Block 1387, in the city of St. Louis, for the improvement of Gravois Avenue.   The tax bills were issued September 25, 1903.   At that time John R. Tiffany, as trustee for Ellen Louise Tiffany Dodd, held the dry legal title to the lots, but his *cestui que trust* was the owner of the equitable title in fee simple.   The title so remained until 1905.   Subsequently the property was acquired, first, by the Rich Construction Company, then by the Rich Realty & Investment Company, and finally by Amelia Corrine Rich.   At the time the suit was commenced, January 11, 1912, the Rich Investment Company was the owner of the property.   Nevertheless all the persons and corporations above named were made parties

defendant.   The petition was in two counts and in the usual form.   There was no appearance on the part of the defendants Dodd and Tiffany.   The joint answer of the three other defendants consisted of a general denial and a number of affirmative defenses.   It is only necessary to say that the pleading was in all respects sufficient to tender the defenses relied upon in the trial, namely : That the suit was prematurely brought; that the property against which the special tax bills was issued did not lie within the district which, under the provisions of the charter of St. Louis then in force, was subject to assessment for the cost of the said improvement; and that the assessments as made violated rights guaranteed defendants by the Fourteenth Amendment of the Constitution of the United States.

An ordinance duly enacted provided for the improvement of Gravois Avenue between Eighteenth Street and Jefferson Avenue.   Plaintiff was awarded the contract, and the improvement was made conformably thereto and accepted by the city.   Among other tax bills issued to pay for the cost of the improvement were the two in suit :   one for $131.68 against part of lot 46 and one for $161.41 against part of lot 47.   Both were payable in seven equal installments.   Further facts bearing on the questions presented will be stated in connection with their consideration.

No declarations of law were asked or given.   The court found generally for defendants and entered judgment accordingly.   From such judgment plaintiff prosecutes this appeal.

I.   The question of whether any cause of action on the special tax bills had accrued at the time of the commencement of the suit arises in connection with certain provisions of the charter with respect to notice of the issuance of special tax bills, in force at the time of their issuance.   Those provisions, so far as pertinent, were as follows:

"It shall be the duty of the city marshal, at the request of the holder or owner of any tax bill issued under this charter, to serve upon the party or parties named in such tax bill, a notice of the issuance thereof, which service shall be made in the manner provided by law for the service of writ of summons in civil cases. The return of the city marshal as to service shall be conclusive of the facts therein stated, and any person who may be injured by a false return shall have his right of action for damages resulting therefrom against the marshal on his official bond.

". . . Every special tax bill authorized by this charter to be levied or assessed for the construction or reconstruction of streets, avenues, highways, boulevards, or district or joint district sewers, shall be divided into not less than three, nor more than seven equal parts, as may be provided by the ordinance authorizing such improvements, payable and collectible in installments as follows: The first installment shall become due and payable thirty days after notice of the issuance thereof, without interest; the second installment shall become due and payable one year after such notice; the third installment, two years; the fourth installment, three years; the fifth installment, four years; the sixth installment, five years; and the seventh installment, six years, after such notice; provided, however, that the owner, or any person having an interest in the property charged with a tax bill, may pay the same in full at any time within thirty days after notice, as aforesaid, without interest, and such owner or person having an interest may pay such tax bills in full at any time by paying interest thereon as follows: If paid at or before maturity and more than thirty days after notice, as aforesaid, at the rate of six per cent per annum from date of notice to date of payment; if paid after maturity, at the rate of six per cent per annum from date of notice to date of maturity, and at the rate of eight per cent per annum from date of maturity to date of payment; all interest shall be payable annually from date of

notice of the issuance of tax bills. If any installment of any such special tax bills, or any interest on any installment, be not paid when due, then at the option, of the holder thereof, all remaining installments shall become due and collectible, together with interest thereon as aforesaid.''

There were offered in evidence two documents purporting to be written notices of the issuance respectively of the two tax bills in suit. Each was addressed, "To Ellen Louise Dodd, wife of Edwin M., John K. Tiffany, Tr.,'' and each had appended to it the following:

"I, the undersigned, Gus Reiman, of the City of St. Louis, Missouri, do hereby make return that I served the above and foregoing notice upon Ellen Louise Dodd by delivering a duplicate copy thereof to John K. Tiffany, Tr., on this 11th day of January, 1904 in the City of St. Louis, Mo.

, "Gus Reiman.''

Defendant objected to the reception of the purported returns ''because they were not made by the marshal, and because a return by a stranger is not proof of service; and, secondly, because the service shown by the return, even if the return were competent evidence, would be insufficient since not made in accordance with the provisions of the charter.'' They were admitted subject to the objection. The alleged return of Reiman, if accepted, as proof of the service had, discloses that Ellen Louise Dodd, the owner of the property (St. Louis v. Bernoudy, 43 Mo. 552) and ''the party . . . named in the tax bills,'' was not served ''in the manner provided by law for the service of writ of summons in civil cases.'' Service of a writ of summons upon the trustee would not have been service upon her. But there was no competent proof of service upon any one. Reiman's unverified statement was pure hearsay. The evidence therefore fails to show that notice of the issuance of the tax bills was ever given or served upon anyone.

305 Mo.—12.

A casual reading of the charter provisions relating to the giving of notice of the issuance of special tax bills, payable in installments, makes it plain that such notice is not required merely for the purpose of starting the accrual of interest, but to fix the dates of maturity of the several installments themselves. Such installments do not become "payable and collectible" until the expiration of fixed periods "after notice of the issuance" of the tax bills. The defendant, Ellen Louise Dodd, was a non-resident at the time the suit was instituted and it is probable that she was not a resident either of the city of St. Louis or of the State when the special tax bills were issued. The charter then in force made no provision for the service of notice on non-residents, nor did it make any exception of them with respect to the giving of notice. The new charter (adopted in 1914) meets the situation by making the installments fall due within designated periods after the service of notice, or a return of "not found." It is obvious that the liens of the special tax bills in suit cannot be foreclosed unless such tax bills are due and payable. This plaintiff failed to show. If the present suit be treated as notice to the owner of the property of the issuance of the tax bills, such notice matured the several installments at times subsequent to the bringing of the action. On that view the suit must fail, because prematurely brought. [Heard v. Ritchey, 112 Mo. 516.]

II. The charter in force at the time of the improvement of Gravois Avenue required that one-fourth of the cost of such an improvement be assessed under the front-foot rule and three-fourths on the basis of area. The ordinance providing for the improvement did not establish a benefit or assessment district. In was evidently considered that by the enactment of the ordinance designating the street improvement to be made the boundaries of the assessment district would thereupon become automatically established by charter provisions. Those provisions were as follows:

"The districts herein referred to shall be established as follows: A line shall be drawn midway between the street to be improved and the next parallel or converging street on each side of the street to be improved, which line shall be the boundary of the district, except as hereinafter provided, namely: If the property adjoining the street to be improved is divided into lots, the district line shall be so drawn as to include the entire depth of all lots fronting on the street to be improved. . . . If there is no parallel or converging street on either side of the street to be improved, the district lines shall be drawn three hundred feet from and parallel to the street to be improved; but if there be a parallel or converging street on one side of the street to be improved to fix and locate the district line, then the district line on the other side shall be drawn parallel to the street to be improved and at the average distance of the opposite district line so fixed and located."

The assessor of special taxes of the city of St. Louis laid off the boundaries of the assessment district according to the charter requirements as he conceived them.

Gravois Avenue from Eighteenth Street to Jefferson Avenue runs in a southwesterly direction. City Block 1387, it will be observed from the accompanying plat, is triangular in form, Gravois Avenue forming the base and McNair Avenue and Ann Avenue forming the two sides of the triangle. In laying out the north boundary of the assessment district through block 1387 the assessor bisected the angle formed at the intersection of the north line of Gravois Avenue with the east line of McNair Avenue and also the angle formed at the intersection of a prolongation of a certain segment of the north line of Gravois Avenue with the west (or south) line of Ann Avenue and these bi-secting lines he extended until they met.

It is apparent that the assessor treated McNair Avenue and Ann Avenue together as constituting "the next parallel or converging street" to the street to be improved, between which and the street to be improved he

endeavored to draw a line midway. The most of the
blocks on both sides of Gravois Avenue between Eight-

eenth street and Jefferson Avenue were irregular in form, and the assessor in laying out the boundaries of the assessment district through them followed the same general method employed in marking the boundary across block 1387. Gross inequalities resulted. They are correctly summarized in some of their aspects by respondents as follows:

"It appears therefrom (the plat of the assessment district) that, in block 1337, the district line was drawn at a distance ranging from about 30 feet to about 50 feet from the street improved; that in block 1387 it was drawn at a distance varying from 150 feet to 250 feet from the street to be improved; that, in block 1400, it was drawn at a uniform distance of 120 feet from the street to be improved; that in block 1402, which is triangular in shape, it was drawn at a distance varying from a point or nothing to 191.63 feet from the street to be improved; that in the opposite block, namely, 1403, it was drawn at a distance varying from 420 feet to 467 feet; that in blocks 1399 and 1398 it was drawn at a uniform distance of 120 feet from the street to be improved; that in block 1396, south, it was drawn at a distance of 256.71 feet from the street to be improved; that in block 1393 it was drawn at a distance of 72.56 feet from the street to be improved; that in block 1388 it was drawn at a distance varying from 22 feet to 125 feet from the street to be improved, and that in block 1335 it was drawn at a distance of about 175 feet from the street to be improved."

Defendants' lots did not communicate with the street to be improved, or any other, except by alleyways; the distance from them to Gravois Avenue exceeded 125 feet; the boundary line of the assessment district where it crossed them was 250 feet from the improvement, while immediately across the street the distance between the improvement and the boundary ranged from but 50 to 125 feet. The boundaries of the district as a whole lay for the most part within 125 feet or less from Gravois Avenue.

It is not necessary to determine whether the boundaries of the assessment district as laid out by the assessor of special taxes conformed to the requirements of the charter. It is sufficient to say that the assessments as made operated to tax the landowners disproportionately to each other and to the benefit conferred, and that defendants will suffer from such inequalities if the tax be collected as assessed. [Gast Realty Co. v. Schneider Granite Co., 240 U. S. 55.] As pointed out in the case just cited it is all but impossible to prescribe a hard-and-fast rule for the establishing of taxing districts to meet the expense of local improvements which will not in its application to some situations run counter to the Fourteenth Amendment. In the present charter the power to determine the benefit district with reference to each particular public improvement which it orders is wisely committed to the legislative discretion of the Board of Aldermen.

For the reasons herein indicated the judgment of the trial court is affirmed. All concur.