HESSE-RIX COMPANY, Appellant, v. HENRY KRUG and SELMA KRUG.— 6 S. W. (2d) 570.

Division One, April 11, 1928.

*John C. Landis, Jr.* for appellant.

*Strop & Silverman* for respondents.

SEDDON, C.—This is an action upon two special tax bills, dated April 26, 1923, and issued by the city of St. Joseph, Missouri, a city of the first class, to Metropolitan Paving Company, a paving contractor, and duly assigned by said contractor to the plaintiff and appellant herein, evidencing special assessments, levied against two unplatted tracts of land owned by the defendants and respondents, as a proportionate part of the cost of paving Roosevelt Avenue in said city, from St. Joseph Avenue to a point 199 feet west of Eleventh Street, pursuant to a special ordinance of said city No. 8860, approved by the mayor of said city on September 6, 1922. Roosevelt Avenue is a street forty feet wide, running in an easterly and westerly direction, the easterly end of said Roosevelt Avenue being the westerly line of St. Joseph Avenue. The total length of the paving improvement for which the special tax bills in controversy were issued is 586.45 feet, and the total cost of the paving improvement, according to the final estimate of the city engineer, was $4573.40.

The petition is in conventional form and is cast in two separate counts, each of the tax bills in controversy being, respectively, the subject of a single count of the petition. The answer, among other de-

fenses specially pleaded, pleads that Section 7795, Revised Statutes 1919, applicable to cities of the first class and constituting a part of the charter of the city of St. Joseph, under which statute, or charter provision, the special assessments evidenced by the tax bills in controversy were levied, is inconsistent with, and violative of, the Fourteenth Amendment to the Constitution of the United States in that such statute is arbitrary, and, when applied to the properties supposedly benefited by the improvement of said Roosevelt Avenue, taxes said properties disproportionately to each other and disproportionately to the benefits conferred, and, if enforced, will take the properties of defendants without due process of law; and that, if said statute be not wholly unconstitutional and void, such statute is unconstitutional and void, for the reasons aforesaid, when applied to the lands of defendants against which the tax bills in controversy were issued. The answer further alleges that the taxation and assessment district respecting said improvement, as laid out by the city engineer of St. Joseph, embraced lands lying within a distance of (approximately) only 130 feet south of Roosevelt Avenue, whereas said taxation and assessment district embraced lands lying within a distance of more than 500 feet north of said Roosevelt Avenue, and that, in levying the assessments, and in issuing the special tax bills, against the several tracts of land in said district, as thus laid out, the city engineer failed to follow the requirements of Section 7795, Revised Statutes 1919, and the provisions of the charter of said city; and if the engineer, in laying out the taxing district as aforesaid, followed the requirements of said statute and the provisions of the charter applicable to said city, then such statute and charter provisions are unconstitutional and void when applied to the lands owned by the defendants. The reply denies generally the averments of the answer.

The trial court, upon a trial of the issues thus raised by the pleadings, denied plaintiff recovery upon the tax bills in controversy, and entered judgment, finding the issues for defendants and that plaintiff take nothing by its action and that defendants recover of, and from, plaintiff the costs of the action. After an unsuccessful motion for a new trial, plaintiff was allowed an appeal to this court. We take jurisdiction of the appeal because the case involves the construction of the Constitution of the United States. [Sec. 12, Art. VI, Mo. Const.]

The facts involved are simple and uncontroverted. A plat, or blue print, in evidence shows quite clearly the boundary lines of the taxing district, the several tracts of land which were assessed and taxed for the cost of the improvement of Roosevelt avenue, and the amount of the special tax levied and assessed against each of the several tracts of land charged with the cost of said improvement. We ap-

# KRUG PARK

pend said plat hereto, as a part of our opinion, for the purpose of a clear and better understanding of the limits of the assessment, or taxation, district, and of the method of assessment followed by the city engineer of St. Joseph in levying the special tax and in assessing the respective lands charged with the cost of said improvement.

(See tip of Colored Map.)

As will be observed from the above and foregoing plat, or blueprint, Roosevelt Avenue is contained wholly within the addition, or plat, of Arlington Heights, and the portion of Roosevelt Avenue improved under the city ordinance in question is bounded on the north by blocks 7 and 8, of said addition, and is bounded on the south by blocks 1 and 2, of said addition, the portion of Roosevelt Avenue improved being shown in red upon the above plat or blue print. Blocks 1, 2, 7 and 8, respectively, of Arlington Heights, are platted and subdivided into lots, each of such lots having an average depth of approximately 116 feet, measured back from Roosevelt Avenue, except lots 1 to 4, inclusive, in block 1, Arlington Heights, which have their frontage upon St. Joseph Avenue, and the side lines of which lots parallel Roosevelt Avenue. Upon and along the south side of blocks 1 and 2, Arlington Heights, there extends an alley, fifteen feet wide, running east and west, and parallel with Roosevelt Avenue. South of said alley, lie blocks 17 and 18 of Buechle's Addition, which blocks are likewise platted and subdivided into lots having an average depth of 126½ feet, but none of which lots abuts upon Roosevelt Avenue. The north seven feet of lots 1 to 4, inclusive, block 18, Buechle's Addition, are included within the assessment, or taxation,

district for the improvement in controversy. Abutting upon the north line of Roosevelt Avenue, and lying between the east line of block 8, Arlington Heights, and the westerly line of St. Joseph Avenue, is an unplatted tract of land which extends back from, and north of, Roosevelt Avenue a depth of 124.6 feet, with a frontage of 249.2 feet on the north side of Roosevelt Avenue, which unplatted tract of land is likewise included within the assessment or taxation district. The two unplatted tracts of land, designated, respectively, upon the above plat by the letters, M and N, are the two tracts of land owned by the defendants herein, and against which the two special tax bills in suit are issued, evidencing the special assessments levied for the improvement of Roosevelt Avenue and charged against said unplatted lands lettered M and N. The amount of the special assessment levied against each of the several tracts of land in the assessment district is shown on the above plat in red figures attached to each separate tract of land assessed. The unplatted tract of land lettered M is taxed or assessed, as its proportionate share of the cost of the improvement of Roosevelt Avenue, in the sum of $539.31, evidenced by special tax bill No. 42414, which is the subject of the first count of the petition herein. The unplatted tract of land lettered "N" is taxed or assessed, as its proportionate share of the cost of such improvement, in the sum of $346.65, evidenced by special tax bill No. 42425, which is the subject of the second count of the petition herein. Neither of tracts M and N abuts upon Roosevelt Avenue, the street improved. An alley, seven and one-half feet in width, separates tracts M and N, on the north, from blocks 7 and 8, Arlington Heights, on the south. Eleventh Street, an intersecting or cross-street, extends north from the north line of Roosevelt Avenue approximately 124 feet to the south line of tract M. The seven and one-half foot alley and said Eleventh Street are the only ways of communication between said tracts M and N and Roosevelt Avenue. The main, or principal, frontage of tract M is upon St. Joseph and Magnolia avenues, which two streets are the natural and direct ways of communication to tract M, and to the immediately adjoining tract N. The north-and-south depth, or dimension, of tract M is 375 feet, while the north-and-south depth, or dimension, of tract N is 395 feet.

It is to be readily seen from the foregoing plat that the assessment, or taxation, district for the improvement in question extends a maximum distance of only 138 feet (including a fifteen foot alley) south of Roosevelt Avenue, whereas the assessment district extends a maximum distance of 519 feet (including a seven and one-half foot alley) north of Roosevelt Avenue, the street improved. It will also be readily observed from said plat that the lands immediately abutting on Roosevelt Avenue, and on both sides of said street, are platted

into lots, each having an average depth of approximately 116 feet, measured back from the respective lines of said street. The south line of tracts M and N (being the line of said tracts nearest the street improved) is located a distance of 124 feet north of Roosevelt Avenue, the street improved, and the north line of tract M (being the line farthest from the street improved) is located 499 feet north of the said street improved, while the north line of tract N is located 519 feet north of the said street improved. The total, or aggregate, amount of the special assessments levied against the platted lots lying south of Roosevelt Avenue is $2362.10, slightly more than one-half of the total cost of the paving improvement, which cost, according to the final estimate of the city engineer, was $4573.40. Lots 1 to 5, inclusive, block 7, Arlington Heights, abutting on the north side of Roosevelt Avenue, and lots 1 to 5, inclusive, block 2, Arlington Heights, abutting on the south side of said street, lie directly opposite each other, and each of said lots has the same average dimensions and area, yet each of the platted lots abutting on the south side of the street improved bears an average assessment of $160, while each of the platted lots abutting on the north side of said street bears an average assessment of approximately $95. The difference in the assessments levied against the platted lots abutting on the south side of the street improved and the assessments levied against the platted lots (of similar dimensions and area) abutting on the north side of said street is attempted to be cared for, and made up, by assessing the unplatted tracts M and N, owned by the defendants, although neither of said unplatted tracts abuts upon, or has immediate and direct access to, the street improved, and although neither of said unplatted tracts lies nearer than 124 feet from the street improved and the north side of said unplatted tracts is distant approximately 500 feet from the street improved.

The ordinance of the city of St. Joseph, numbered 8860, providing for the improvement in question, does not prescribe, or establish, a benefit or assessment district. It was evidently considered by the law-making authorities of the city that, by the mere enactment of the ordinance authorizing the improvement, the boundaries of the taxation or assessment district would thereupon become automatically established by the statute, or charter provision, applicable to such an improvement in a city of the first class, such as the city of St. Joseph. Such statute, or charter provision (Sec. 7795, R. S. 1919), is as follows:

"The cost of all work on streets, avenues, and highways, or any part thereof, except as hereinafter provided, shall be charged,

"First: As a special tax on lands on both sides of and adjoining the street, avenue or highway, or part thereof; and

"Second: When such lands are platted into blocks the lands so platted, from the line of the street, avenue or highway improved back to a paralleling line dividing the block into equal areas; and

"Third: When said lands are laid off into lots, but not into blocks, or when divided into shallow parcels of a depth of less than 150 feet measured from and at right angles to the street improved, then all such lots or parcels back from and on either side of the street improved, and all lands in the rear thereof back to a line paralleling the street, avenue or highway improved and dividing into equal areas the area lying between the street improved and the street on either side thereof paralleling or having the same general direction as the street improved, shall be so charged: *Provided, however*, that if any such paralleling street, or street having the same general direction of the street improved, is more than seven hundred feet distant from the street improved, then as to subdivision 'third' hereof, only the property within three hundred and fifty feet of the street improved shall be so charged. When any work, other than grading, shall be completed under authority herein granted, the city engineer shall compute the cost thereof according to the frontage of the property on the street improved. That is to say, the total cost of the roadway shall be divided by the total number of feet of land fronting on the improved street and that quotient shall be taken as the price per front foot in apportioning the cost to the property to be charged therewith as designated under above subdivision 'first.' . . . The lands in each 'block' as specified in subdivision 'second' hereof shall be divided into three zones having equal areas, and the lands in each 'tract' as specified in subdivision 'third' hereof, shall be divided into three zones having equal areas, the zone lines paralleling the street, avenue or highway improved. The zones shall be numbered consecutively 'one', 'two' and 'three' from the street, avenue or highway improved. Zone 'one' shall bear fifty per cent, zone 'two' thirty per cent, and zone 'three' twenty per cent, of the cost chargeable to any such 'block' or 'tract.' The total amount to be charged against any such 'block' or 'tract' for such improvement shall be apportioned to the several pieces of land therein according to the zone within which each of the several pieces lies and in proportion to the area that each of the separate pieces of land in each zone bears to the area of the 'block' or 'tract' included in the zone in which each piece lies. A 'block' within the meaning of this section shall be the platted block, unless two or more platted blocks are so laid off as to constitute, when combined, but one tract or piece of land undivided by streets, avenues, or boulevard, paralleling the street improved, or having the same general direction of the street improved, in either of which cases the physical block, that is, the tract of land bounded by a paralleling street, or street having the same general direction as the

street improved, shall be taken as the 'block' for the purpose of assessment.''

The foregoing statute, or charter provision, prescribes two separate and wholly different methods of assessment and taxation to defray the cost of a street paving improvement. Subdivision "first" thereof prescribes the "front-foot rule" of assessment, by which method or rule of assessment only the lands immediately adjoining and abutting on the street improved are assessed for the cost of the improvement. Subdivisions "second" and "third" thereof prescribe the "area rule" of assessment, by which method or rule of assessment the lands supposedly benefited, regardless of whether they adjoin and abut upon the street improved or not, are assessed with the cost of the improvement according to the zone within which they respectively lie, and in proportion to the area that each of the separate pieces, or tracts, of land in each zone bears to the total area of the zone in which such lands lie. Obviously, the city engineer of St. Joseph, in levying the special assessments for the cost of the paving improvement in question, adopted and used the "area rule" of assessment, for it is plainly evident that neither of the unplatted tracts M and N, owned by the defendants, adjoins or abuts upon the street improved, and the special tax bills issued against each of said unplatted tracts disclose upon their face that approximately one-half of the special assessment or tax levied against each of said unplatted tracts was computed upon the basis that a portion of each of said tracts lay within zone "two," and the balance of such special assessment or tax was computed upon the basis that a portion of each of said tracts lay within zone "three."

The defendants (respondents) claim that the city engineer of St. Joseph, in apportioning the cost of the improvement among the several parcels of land charged therewith, failed to follow the provisions and requirements of Section 7795, Revised Statutes 1919. But be that as it may (and which claim, aforesaid, of respondents we do not find it necessary to discuss or rule herein), the city engineer of St. Joseph seemingly laid off the boundaries, and the three zones, of the assessment district as he conceived them, and apportioned the cost of the improvement among the several parcels of land assessed therefor according to his conception of the statutory requirements. In so doing, it is palpable that such officer of the city laid off the assessment district and the several zones thereof, and apportioned the cost of the work, mechanically and in blind obedience to the criteria, or rule of assessment, which he conceived to be directed by the applicable statute, or charter provision, without regard to, or any consideration of, the special benefits accruing to each of the several respective tracts of land so charged and assessed, by reason of the paving improvement. While we are mindful that it is well-nigh im-

possible to lay down and prescribe a hard-and-fast rule for the establishment of special taxation districts which will not, in some instances, conflict with the Fourteenth Amendment to the Federal Constitution, and while we are also cognizant of the fact that exact uniformity and equality in assessment of lands for public improvements is not capable of human accomplishment, wherefore the courts must take a somewhat liberal view of inequalities in assessment necessarily resulting from the application of any fixed rule of apportionment, and will not, therefore, as a general rule, give heed to complaints against a rule of apportionment which approximates justice and equality in assessment as nearly as may reasonably be possible, nevertheless, where the rule of apportionment used (as in this instance) palpably results in gross inequality of assessment, and arbitrarily, and in blind obedience to a statutory or charter rule, distributes the burden of the cost of the improvement without regard to, or consideration of, the special benefits applicable to the several and respective parcels or tracts of land taxed, such rule of apportionment cannot be upheld, and the special ordinance or the statute (as the case may be) which prescribes the rule of apportionment so used will be held unconstitutional, as contravening the Fourteenth Amendment to the Constitution of the United States, as against the defendant owner of the land so unequally assessed and taxed.

A somewhat similar state of facts was involved in the case of Gast Realty Co. v. Schneider Granite Co., 240 U. S. 55, wherein an ordinance of the city of St. Louis, enacted in pursuance of the charter of said city, which prescribed the "area rule" of assessment, in establishing the boundary lines of the taxing district included defendants' unplatted tract of land to a depth of between 400 and 500 feet back from the street improved, while platted lots immediately adjoining defendants' unplatted tract were included only to a distance of 100 feet back from the street improved, and platted lots on the opposite side of the street from defendants' unplatted tract were included to an average depth of 150 feet back from the street improved and another unplatted tract of land was included to an average depth of only 240 feet. In that case, the Federal Supreme Court, in ruling the application of the charter rule of apportionment to defendants' tract of land to be in contravention of the Fourteenth Amendment to the Federal Constitution, said (l. c. 59): "The ordinance, following the charter as construed, established a line determining the proportions in which the tax was to be borne that, after running not a hundred feet from the street, leaped to near five hundred feet when it encountered such a tract, and on the opposite side of the street was one hundred and fifty and two hundred and forty feet away. The differences were not based upon any considera-

tion of difference in the benefits conferred, but were established mechanically in obedience to the criteria that the charter directed to be applied. The defendants' case is not an incidental result of a rule that as a whole and on the average may be expected to work well, but of an ordinance that is a farrago of irrational irregularities throughout. It is enough to say that the ordinance following the orders of the charter is bad upon its face as distributing a local tax in grossly unequal proportions, not because of special considerations applicable to the parcels taxed, but in blind obedience to a rule that requires the result.''

In Parker-Washington Co. v. Dodd, 305 Mo. 171, 182, this division of our own court ruled that a charter provision applicable to the city of St. Louis, followed by the city authorities in apportioning the cost of a street improvement, which created a taxing district lying, for the most part, within 125 feet of the street improved, but varying from 30 feet to 467 feet from the street improved, is unconstitutional when applied to defendants' lots, which did not communicate with the street improved, except by alleyways, and which were located about 250 feet from the street improved. We therein said: ''It is not necessary to determine whether the boundaries of the assessment district, as laid out by the assessor of special taxes, conformed to the requirements of the charter. It is sufficient to say that the assessments as made operated to tax the landowners disproportionately to each other and to the benefit conferred, and that defendants will suffer from such inequalities if the tax be collected as assessed. [Gast Realty Co. v. Schneider Granite Co., 240 U. S. 55.]''

See, also, Commerce Trust Co. v. Blakely, 274 Mo. 52, wherein we held to be invalid an assessment, made under the ''valuation rule'' of apportionment, which distributed a local tax in grossly unequal proportions, and wherein the cost of the improvement was apportioned, not because of special considerations of benefits applicable to the several parcels of land taxed, but in blind obedience to a supposed charter rule of assessment and apportionment.

It is palpable that the taxing district, as laid out by the city engineer of St. Joseph in the instant case, and the assessments levied against the several tracts and parcels of lands lying within such taxing district, operated to tax the landowners disproportionately to each other and disproportionately to, and without consideration of, the benefits conferred, by reason of which inequalities the defendants herein will suffer if the assessments levied against their two tracts of land be collected as assessed. Hence, the trial court rightly denied plaintiff a recovery upon the special tax bills in controversy, evidencing the assessments levied against defendants' lands. The judg-

ment *nisi* should be affirmed, and it is so ordered. *Lindsay* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. *Graves, P. J., Ragland, Atwood* and *Gantt, JJ.,* concur.