Frank J. Wiget and Ottillia Wiget, His Wife, et al., Appellants,
v. The City of St. Louis et al.—85 S. W. (2d) 1038.

Division Two, September 3, 1935.*

*B. E. Hamilton* for appellants.

*NOTE: Opinion filed at May Term, 1935, July 11, 1935; motion for rehearing filed; motion overruled at September Term, September 3, 1935.

*Charles M. Hay* and *Oliver Senti* for respondents.

BOHLING, C.—This is a suit in equity to declare an ordinance (No. 38544, approved June 30, 1930) of the city of St. Louis for the improvement of Bingham Avenue void as being in contravention of Federal and State constitutional provisions, and to restrain the Board of Public Service of said city from advertising for bids and letting any contract for said work under said ordinance. Plaintiffs appeal from a judgment sustaining defendants' demurrer.

Plaintiffs' petition describes the parties plaintiff and defendant, the real estate owned by plaintiffs subject to the provisions of the ordinance and, alleging the due enactment of said ordinance, sets it out. The ordinance establishes the boundaries of a benefit or taxing district for the improvement of said Bingham Avenue, authorizes and directs the Board of Public Service of said city to let a contract for said improvement, and, among other things, provides that the cost of said improvement shall be levied and assessed against parcels of ground within said benefit or taxing district as provided in the Charter of said city. The petition continues:

"Plaintiffs further state the Charter of the City of St. Louis provides that before the Board of Public Service shall recommend any ordinance for any public work, including the construction of any public highway or street, the Board shall designate a day upon which it shall consider the proposed district and the boundaries thereof, and shall give two weeks' public notice in the paper or papers, doing the City's publishing, of the time and place of such hearing.

"Plaintiffs further state that said notice was published in a paper owned and operated by the City of St. Louis, and which is not a paper of general circulation, but one whose subscribers are limited to a very few people doing business with the officials of the city government, and is not a paper or papers contemplated by the City Charter.

"Plaintiffs further state that for many years past there has grown up a custom in the City of St. Louis, which custom was originated by the City of St. Louis, and which custom is known far and wide and among those who own property in the City of St. Louis, Missouri, that before the Board of Public Service shall recommend any ordinance for any public improvement, including a street or public highway, notices shall be posted along said highway notifying the owners of property of the time and place of a hearing before said Board of Public Service; also setting forth the proposed district and an estimated cost of same.

"Plaintiffs further state that before the Board of Public Service

recommended the ordinance above described there was no notice posted along the street in said area to be taxed setting forth the day on which the Board of Public Service would consider the proposed district, when, the time and place of such hearing, and that plaintiffs herein had no knowledge either through the posting of said notice or the publication of said notice as to when and where there would be a hearing on account of said proposed improvement.''

The petition further alleges, in substance, that plaintiffs' property was assessed to a depth of 263.58 feet on the western part of said improvement; that property on the east in many places was assessed to a depth of only 52½ feet; that the boundaries of said benefit or taxing district were fixed arbitrarily and without any consideration of the benefits accruing to the property therein from said improvement; that said property of plaintiffs will be while other lands similarily located will not be subject to a lien of like assessment for the area tax; that said property of plaintiffs will not be taxed on the same basis and in the same proportion as other property in said district; that said differences will not be based upon any consideration or differences in benefits conferred but will be caused by the arbitrary and mechanical manner in which said ordinance establishes said boundaries without reference to the benefits to be derived therefrom; and that the provisions of said ordinance place on plaintiffs' property an unequal and disproportionate part of the cost of said improvement, and violate the due process and equal protection clauses of the Constitution of the United States (Amendment 14, U. S. Const.) and the due process (Art. 2, Sec. 30) and other clauses of the Constitution of the State of Missouri.

Plaintiffs' petition attacks only the action of the Board of Public Service and the Board of Aldermen in the establishment of the area assessment for said improvement under the Charter of the City of St. Louis. It makes no complaint of any charter provision. The determination of the sufficiency of the petition turns upon the applicable provisions of said charter, of which provisions judicial notice is taken. [St. Louis v. Lang, 131 Mo. 412, 420, 33 S. W. 54, 55.] The provisions of said charter material to the issues involved follow.

Section 1 of Article 22 of the Charter of the City of St. Louis provides that ''no ordinance for public work or improvements of any kind . . . shall be adopted, unless prepared and recommended by the Board of Public Service. . . .''

Section 10 of said article provides for the payment of improvements of the nature here involved by special assessment, as follows: ''Onefourth of the entire cost shall be levied and assessed against the lots or parcels of ground abutting on the work or improvement ratably by lineal feet so abutting, and the remainder of the cost shall be levied and assessed ratably by area against all the lots or parcels

of ground exclusive of public highways, within the benefit or taxing district. . . ."

Section 3 of said article, providing the method of determining the benefit or taxing district (the property subject to an area assessment under said Sec. 10) for such an improvement, insofar as material, reads: "Before the Board of Public Service shall recommend any ordinance for any public work or improvement, including the construction or other improvement of any public highway, street, . . . or any part thereof, to be paid for, in whole or in part, by special assessment, it shall lay out, or shall have laid out, a proposed benefit or taxing district, . . . and shall include therein all property against which it is proposed to assess benefits for the payment, in whole or in part, of the cost and expense of such work or improvement; and the Board of Public Service shall thereafter designate a day upon which it will consider the proposed district and the boundaries thereof and the projected work or improvement at a public hearing, and shall give two weeks' public notice in the paper or papers doing the City publishing, of the time and place of such hearing, which notice shall set forth that a proposed district to pay the cost of the work or improvement has been laid out by said Board, and that the boundaries thereof may be ascertained at the time and place specified for such hearing. Such notice shall indicate, in a general way, the location of such district by reference to adjoining streets, and shall designate the matters to be considered and the estimated cost of the work or improvement, which estimate may cover several classes of materials. At such hearing all persons interested may appear and be heard with regard to what property shall be included in said district, and as to all matters connected with the work proposed. Within three days after such hearing is concluded, the Board shall file in its office its decision, stating its determination as to the exact boundaries of the district, the work or improvement determined upon, if any, and the class or classes of material to be used. If within eighteen days after such decision the owners of the greater area of the land in such district as determined shall file in the office of the Board of Public Service their written remonstrance against the district as determined, or the proposed work or improvement, the Board, at its next meeting, shall reconsider and either reverse its action or transmit to the Board of Aldermen, together with such remonstrance, an ordinance establishing the benefit or taxing district . . . as determined, and authorizing the proposed work to be done or improvement to be made. . . ."

Section 30 of Article 15 of said charter provides: "Provision may be made by ordinance for the city doing its own printing and publishing."

Defendants' demurrer alleges, among other things, that plaintiffs' petition does not allege facts sufficient to entitle plaintiffs to the

**804**

relief sought or to any other equitable relief; that it does not allege that the Board of Public Service did not give two weeks' public notice as required by said charter; and that it does not allege facts sufficient to overcome the presumption that the officers of said city acted lawfully in establishing said benefit or taxing district. Defendants contend it follows from the allegations in plaintiffs' petition that the notice of the hearing before the Board of Public Service was published in the manner required by law; that the hearing was in accord with due process of law and is final and plaintiffs are bound thereby; and that as plaintiffs failed to avail themselves of the remedy provided by law, equity will not grant them relief which they might have obtained by making their complaint to the Board of Public Service before it established said benefit or taxing district.

█ Introductory to the setting out of said Ordinance No. 38544 in plaintiffs' petition, said petition alleges "that on or about the 30th day of June, 1930," said ordinance "was duly enacted by the Board of Aldermen of the City of St. Louis." Indulging in the presumption of the lawful discharge of their official duties by the municipal authorities (10 R. C. L. 880, sec. 27; 22 C. J. 130, secs. 69-72; Kansas City v. Brown, 286 Mo. 1, 19(2), 227 S. W. 89, 93(5)) such requirements as are imposed by said charter provisions as a condition precedent to the enactment of said ordinance by implication are considered complied with, unless controverted by the allegations in plaintiffs' petition. [St. Louis v. Lang, 131 Mo. 412, 420, 33 S. W. 54, 56.] The Lang case, in discussing a petition which pleaded an ordinance of the city of St. Louis defining the limits within which private property had been or might be benefited by a street improvement and the failure of the petition to plead any ordinance of said city authorizing the improvement (131 Mo. l. c. 421), said: "Another suggestion occurs in support of the view just presented. If the authorities of the city in the usual course of business would first have to pass an ordinance to grade Hickory Street, as a condition precedent to the passage of an ordinance of the nature of Ordinance 16454 [the ordinance defining the benefit area], then the passage of the latter ordinance being alleged, affords presumptive proof of the passage of the requisite and prior ordinance. . . ."

█ Examining plaintiffs' petition (hereinbefore set forth insofar as material) it, after alleging the requirements imposed by the charter prior to the recommendation of said Ordinance No. 38544 with reference to a hearing for determining the boundaries of the proposed benefit or taxing district and giving "two weeks' public notice in the paper or papers doing the city publishing" thereof, alleges "that said notice was published in a paper owned and operated by the City of St. Louis;" that said paper was not one of general circulation but one whose subscribers are limited to a very few people

doing business with officers of the city government, and is not a paper or papers contemplated by the city charter. The allegation that the publication appeared in a paper not contemplated by the city charter is founded upon the alleged facts that the city owned the paper in which the notice was published and that said paper was one of limited circulation. In State ex rel. Hussman v. St. Louis, 319 Mo. 497, 512, 5 S. W. (2d) 1080, 1085, the contention was made that publication had in a weekly paper known as the City Journal, a paper published by said city, was not publication in the papers doing the city printing. This court held: "The publication made in this paper contravenes no provision of the constitutional or statutory law, and is in substantial compliance with the ordinance requirement. [The ordinance requirement in that case was that the publication be "in the papers doing the city printing."] Relator says that the City Journal was not a paper designed to give to the proposed amendments the wide publicity contemplated by the ordinance. No particular paper was named, and we do not know just how wide was the publicity contemplated in this publication of the ordinance, but the publication was the same as that made of every other ordinance adopted by the city, and it complied with all legal requirements." Absent any allegation in plaintiffs' petition that said notice was not published in the paper "doing the city publishing," it is presumed the notice was published in conformity with said charter requirement, and was legally sufficient in that respect.

Plaintiffs' petition further alleges a failure to post copies of said notice along the streets in said benefit or taxing area in conformity with a custom theretofore and then existing. In State ex rel. v. Gordon, 217 Mo. 103, 115, 116 S. W. 1099, 1101, statutory provisions required fifteen days' notice of a special municipal bond election to be published in a newspaper whereas the ordinance authorizing said election required, in addition, the posting of notices in each ward of the city. In holding the statutory newspaper publication sufficient, this court said: "As Section 6351, supra, only requires fifteen days' previous notice of the election, by publication in a newspaper published in the city, which was done, that part of Section 5 of said ordinance, requiring notices to be posted in three public places in each ward of the city, was unauthorized and invalid, and the notice, as published, well enough." So, in the instant case, compliance with the charter requirements constituted a sufficient legal publication of the notice, and any custom to post such notices within the district affected imposed no legally essential requirement to the validity of such notice and the benefit or taxing district established pursuant thereto.

The petition also alleges plaintiffs had no actual knowledge of said notice. The charter provisions of the city of St. Louis, adopted in conformity with and under the Constitution of the State of Mis-

souri, have the force and effect of an act of the Legislature in respect to municipal matters such as are here involved. [Fruin-B. Const. Co. v. St. Louis Shovel Co., 211 Mo. 524, 533(2), 111 S. W. 86, 88.] In Londoner v. Denver, 210 U. S. 373, 385, 52 L. Ed. 1103, 1112, 28 Sup. Ct. 708, 714, it is held that if the Legislature of a state instead of fixing the tax itself, commits to some subordinate body the duty of determining whether, and in what amount, and upon whom, the tax shall be levied, due process of law requires that at some stage of the proceedings, before the tax becomes irrevocably fixed, the tax-payer must have an opportunity to be heard, of which he must have notice, either personal, by publication, or by a law fixing the time and place of hearing. The nature of the instant proceeding is *in rem;* and constructive notice by publication in conformity with the unattacked charter requirements, with an opportunity afforded for a hearing before finally establishing the boundaries of the benefit of taxing district, constitutes due process of law with respect to the notice and hearing. [Paulsen v. Portland, 149 U. S. 30, 40, 37 L. Ed. 637, 641, 13 Sup. Ct. 750, 753; Londoner v. Denver, supra; Embree v. Kansas City, etc., District, 240 U. S. 242, 249, 60 L. Ed. 624, 628, 36 Sup. Ct. 317, 319, 320, affirming 257 Mo. 593, 166 S. W. 282.]

Plaintiffs, relying on the cases of Wetterau v. Farmers & M. Trust Co., 285 Mo. 555, 562, 226 S. W. 941, 942; Gast R. & I. Co. v. Schneider Granite Co., 240 U. S. 55, 57, 36 Sup. Ct. 254, 60 L. Ed. 523, 525; Parker-Washington Co. v. Dodd, 305 Mo. 171, 179, 264 S. W. 651, 653; Hesse-Rix Co. v. Krug, 319 Mo. 880, 885, 6 S. W. (2d) 570, 574, contend the assessment of property on the west of said improvement to a depth of 263.58 feet while property on the east of said improvement in many places was assessed to a depth of $52\frac{1}{2}$ feet was not based upon differences in the benefits conferred but solely on the arbitrary and mechanical manner in which the ordinance fixed the boundaries. Under Section 3, Article 22, of said charter, the boundaries of the benefit or taxing district are established after notice and hearing by the Board of Public Service, which Board (under Sec. 1 of said article) prepares and recommends the ordinance to be adopted. The Wetterau, Gast and Parker-Washington cases arose under former charter provisions of the city of St. Louis, which expressly and arbitrarily, without notice or opportunity for a hearing, required the area benefit district to be determined in certain instances by a line half-way between the street to be improved and the next parallel or converging street; and held ordinances establishing benefit or taxing districts distributing the local area tax in grossly unequal proportions, not because of any special considerations applicable to the parcels taxed but in blind and mechanical obedience to the then charter provisions requiring such a result, void. To a like effect is the Hesse-Rix case, involving an im-

provement in the city of St. Joseph. Now Sections 3 and 10, Article 22, of said charter (quoted, supra) are designed to remove the objectionable features of the charter provisions questioned in the Wetterau, Gast and Parker-Washington cases. Section 3 of said article, with reference to the property subject to the area tax provided for in said Section 10, specifically provides, as a condition to the enactment of any ordinance for any street improvement, for the publication of a notice of the time and place at which a public hearing of a proposed benefit or taxing district will be had, at which hearing all interested persons may appear and be heard with regard to the boundaries of such district and all other matters connected with said improvement. After such hearing, the exact boundaries of the district are to be determined, and provisions exist for a reconsideration of the boundaries so established. Plaintiffs did not avail themselves of any of the legal remedies thus afforded, and defendants contend plaintiffs are precluded from obtaining relief in a court of equity. Had plaintiffs appeared at the hearing and adduced evidence sustaining the objections to the boundaries of said benefit or taxing district now alleged in their petition, it is to be presumed that the boundaries of said benefit or taxing district would have been determined in conformity with such evidence, and the alleged inequality in said benefit or taxing district removed. We deem the charter provisions and the proceedings had thereunder afforded ample opportunity for the protection of plaintiffs' rights. The issue under discussion was before this court in Brinkerhoff-Faris T. & S. Co. v. Hill (Mo. Banc), 323 Mo. 180, 194, 19 S. W. (2d) 746, 752, and First Trust Co. v. Wells, 324 Mo. 306, 314, 23 S. W. (2d) 108, 111. The Brinkerhoff-Faris case was a suit filed to enjoin the collection of excess taxes based upon the assessment of shares of bank stock at 100 per centum of their true value while other property was assessed at not more than 75 per centum of its true value and certain other property not at all. The State Tax Commission and the State Board of Equalization were held empowered by law to pass upon and correct the alleged discrimination in the assessment but the plaintiff had made no protest to such commission or board or any other taxing authority until long after the taxes had become due. The court, in conclusion, said: "We do not recede from any of the positions taken in the Schlotzhauer case (Boonville National Bank v. Schlotzhauer, 317 Mo. 1298, 298 S. W. 732, 55 A. L. R. 489); we merely *supplement* its holdings by the further holding that a *taxpayer*, who is aggrieved by a fraudulent assessment of his property, *is not entitled to relief in a court of equity until he has first exhausted the remedies afforded by the statute."* (Italics ours.) This case overruled the prior ruling of this court in Laclede Land & Improvement Co. v. State Tax Commission, 295 Mo. 298, 243 S. W. 887, and held that the State Tax Commission was vested with

full and adequate power, not only to supervise but, to review, the work of the local assessing officers and boards, and to revise assessments not made conformably to law. Prior to the ruling in the Brinkerhoff-Faris case, parties aggrieved by assessments made by local assessing officers and boards, under the then existing law as judicially determined in said Laclede case, were precluded from obtaining relief through application to the State Tax Commission; and, as under the Laclede case "it would have been entirely futile for the plaintiff to apply to the commission" until "after the time in which the commission could act had long expired" (to-wit: the time the Brinkerhoff-Faris case overruled the Laclede case on that issue), the Supreme Court of the United States (Brinkerhoff-Faris Trust & Sav. Co. v. Hill, 281 U. S. 673, 679, 74 L. Ed. 1107, 1112, 50 Sup. Ct. 451, 453) reversed and remanded the Brinkerhoff-Faris case on the ground that under the Laclede case the Brinkerhoff-Faris Trust Company could not have availed itself of the administrative remedy held available by this court in said Brinkerhoff-Faris case; and by denying the Brinkerhoff-Faris Trust Company a hearing on its complaint, the only remedy then available for the enforcement of its rights "without its ever having an opportunity to defend against the exaction," the judgment of the Supreme Court of Missouri deprived said Brinkerhoff-Faris Trust Company of its property without due process of law. The opinion states: "Obviously, therefore, at no time did the State provide to the plaintiff an administrative remedy against the alleged illegal tax; and, in invoking the appropriate judicial remedy, the plaintiff did not omit to comply with any existing condition precedent." Upon the remanding of the Brinkerhoff-Faris case (328 Mo. 836, 42 S. W. (2d) 23), this court proceeded with the merits of the cause, and expressly adhered to the rulings of and made the former opinion a part of its opinion upon remandal; except that portion thereof which denied plaintiff a hearing on the merits, "for the reason plaintiff was not authorized, in view of the decision in the Laclede case (which then had not been overruled) to apply to the Tax Commission for relief." The rule of law announced by this court in its first opinion in said cause to the effect that one "is not entitled to relief in a court of equity until he has first exhausted the remedies afforded by the statute" was not questioned. The essential facts in Boonville National Bank v. Schlotzhauer, 317 Mo. 1298, 1305, 298 S. W. 732, 734, 55 A. L. R. 489, and the Brinkerhoff-Faris case, supra, and First Trust Co. v. Wells, supra, bearing on the issue here under discussion were different. In the Boonville National Bank case the complaint was that shares of plaintiff bank were assessed at 100 per centum of their value whereas other property was assessed at 75 per centum of its value. The statement of facts show "12, that the plaintiff had exhausted its remedy. . . . and that plaintiff had sought relief

at the hands of all administrative boards created under the statutes for granting relief, and had been denied relief by all such boards." Plaintiff was held entitled to a hearing on its bill in equity. In the First Trust Company case the complaint was to the effect that plaintiff's property had been assessed at 114.23 per centum of its value. In that case the trial court overruled defendant's demurrer, and plaintiff obtained judgment enjoining the collection of the alleged illegal tax. In disposing of the case, this court said: "Assuming that respondent had a grievance, it does not appear that it attempted to make use of any of the statutory remedies in order to obtain relief; its pleading, therefore, does not in that respect show it entitled to equitable relief." So it is in this case. The petition does not show that plaintiffs availed themselves of the legal remedy afforded to obtain the relief here sought.

Plaintiffs also cite City of San Diego v. Atchison, T. & S. F. Ry. Co., 45 Fed. (2d) 11, 12; White v. City of Tacoma, 109 Fed. 32, 34; and Embree v. Kansas City, etc., District, 240 U. S. 242, 250, 60 L. Ed. 624, 629, 36 Sup. Ct. 317, 320. A reading of the San Diego and Embree cases discloses that the litigating property owners (in the Embree case some only) had availed themselves of an opportunity to be heard upon the question of the inclusion of their property in the assessment district. A discussion of the instant issue was not essential, under the facts, to the ruling in the Embree case. As we read the White case, the facts appear to be similar to the Wetterau, Gast, Parker-Washington and Hesse-Rix cases, supra, on this issue, although the opinion states complainant protested before the city council, but his protest was overruled by the council. These cases do not rule a case where the complaining litigants fail to avail themselves of a legal remedy affording, after due notice, an ample opportunity for a hearing of the issues.

The judgment should be and is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.